**UNITED STATES of America**

v.

**Blanche MONTROM and Stanley C. Montrom.**

**Crim. No. 72–143.**

United States District Court,
E. D. Pennsylvania.

Aug. 2, 1972.

John T. Thorn, Asst. U. S. Atty., Carl J. Melone, U. S Atty., Philadelphia, Pa., for plaintiff.

Frank M. Jakobowski, Philadelphia, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

This case is before the Court on the defendant's Motion to Suppress Evidence. The pertinent facts are as follows: In the Spring of 1971 it came to the attention of the Bureau of Narcotics and Dangerous Drugs through its normal investigative and drug order monitoring activities that defendant Dr. Stanley Montrom, a Doctor of Osteopathy in Slatington, Pennsylvania, had been ordering unusually high amounts of certain controlled drugs, specifically, around 500,000 dosage units of amphetamines and barbiturates. Doctors of Osteopathy are, of course, authorized to hold, prescribe and distribute barbiturates and amphetamines in the normal course of their practice by both the State of Pennsylvania and the Federal Government, as long as they are duly registered with and licensed by the proper state and federal agencies. However, such dispensations must only be for recognized medical uses made in good faith. In order to insure proper control of dangerous drugs, and to act as a check on any temptation a doctor might have to use his license to engage in the highly profitable if reprehensible illegal traffic in drugs, the Federal Government requires that licensed practitioners keep careful records of their purchases, dispensations and inventories, and that these records and the stocks of controlled drugs kept on hand be available for the inspection of Federal inspection officers. See inter alia 21 U.S.C. §§ 827 and 828.

As a result of Dr. Montrom's rather astronomical purchases of amphetamines and barbiturates, the BNDD decided to

inspect his principal place of practice and audit his required records and inventories.

A BNDD special agent, duly authorized as an inspector under 21 U.S.C. § 880 (b) (2) (see 21 C.F.R. 316.02(e) and 28 C.F.R. 0.100 subpart R, Appendix, Delegations, Directive 13) obtained an inspection warrant as authorized by 21 U.S.C. § 880 to inspect the premises of Dr. Stanley Montrom, 1186 North Oakhurst Drive, Slatington, Pennsylvania.

The BNDD inspectors got to the Montrom premises about 1:30 in the afternoon just minutes after local police had arrived with a warrant for Dr. Montrom's arrest on state drug trafficking charges. It is entirely probable that the BNDD inspectors knew of the intended arrest, and that the arrivals on the scene were co-ordinated beforehand.

The premises at the address on the warrant are comprised of a dwelling house with a portion converted into professional offices from which Dr. Montrom practices. Upon their arrival they entered the doctor's office by its outside entrance. In the office they found Dr. Montrom, already under arrest, the local officers, some three or four in number, who had come to arrest him, and Dr. Montrom's wife. The inspectors presented Dr. Montrom with their inspection warrant, and demanded to see his records and stocks of drugs. To this request, Dr. Montrom responded that the drugs and records were kept "all over the house". He made no further effort to point them out or to produce them, whereupon the inspectors proceeded to look for them on their own, "all over the house", taking two of the local officers with them to assist. In the course of this inspection, or, perhaps more accurately, search for the objects to be inspected, a number of machine guns were come upon, and, being obvious contraband under Federal law, were seized. (See 26 U.S.C. § 5841 et seq.)

There have been a number of recent Supreme Court decisions in the area of administrative inspection warrants. Prior to 1967 the ruling case in the area was Frank v. Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), a case which recognized the power of the state to inspect private premises for reasons of health and safety, and upheld the conviction of a defendant who refused to allow inspection allegedly for such reasons even though there was no warrant for the inspection. In 1967, the Supreme Court reversed the holding of Frank v. Maryland in Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, holding there that a warrant process and a valid warrant was necessary for health and safety inspections of private dwelling premises. The standard of probable cause used in issuing such a warrant should be appropriate to the purposes of the warrant, and the warrant should be reasonably set out in such a way as to alert the owner to the reason for the inspection and the "lawful limits of the inspector's power to search". 387 U.S. 523 at 532, 87 S.Ct. 1727, at 1732, 18 L.Ed.2d 930. The companion case of See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) extended the rationale of *Camara* to private non-dwelling premises used for otherwise unregulated purposes.

In Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60, the court held that as regards the traditionally closely regulated profession of the liquor business, an administration inspection warrant procedure is not necessarily required, and that a right of forced entry without permission might also be included in legislation authorizing inspections, but in the absence of specific statutory authorization the only remedy for refusal of entry is prosecution for that offense.

The very recent case of United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), makes it clear that the principles of *Colonnade Catering* are applicable to all professions in which there is a legitimate public interest in close regulation, as long as the statute authorizing inspection defines with fair specificity the allowable time, place and scope of such an inspection.

In the present case we deal with a pervasively regulated business. Defendant has chosen to engage in that business. It is clear from the *Biswell* case that Congress need not have constructed any warrant procedure at all to authorize an administrative inspection of the defendant's required records and stocks, as long as the inspection authority set out in the statute was reasonably restricted in terms of time, place and scope. Congress, however, saw fit to provide an inspection warrant procedure,[1] including therein the right to enter to serve the warrant if refused admittance.[2] The defendant claims that the statute authorizes inspections not properly restricted as to place and scope and that the inspection in the present case was not, in fact, properly restricted as to place and scope in its execution.

Warrants under 21 U.S.C. § 880(b) (1) are restricted as to place to "controlled premises" and as to scope to "records, reports, or other documents required to be kept or made under this title", and "pertinent equipment, finished and unfinished drugs and other substances or materials, containers, and labeling found therein, [and] all other things therein (except exempt financial date) appropriate for verification of the (required) records, reports, and documents . . " and "stock of any controlled substance" for purposes of inventory and sampling. § 880(b) (3) and § 880(b) (4).

█ It may be quickly seen that the section is amply restrictive as to the scope of the inspection authorized.

Basically, accounts, equipment, raw materials and stocks may be inspected, audited and sampled. This seems to be exactly what is necessary to make sure that everything is above board, and that nothing is leaking into illicit channels either intentionally or by negligence. While it is true that the warrant may authorize the inspection of "other substances or materials" on the premises, this must not be taken out of context. No one seriously suggests that such an "other substance" might be pornography, for instance. It must be related in some way to the regulated business. This broad language was included in a section setting up a uniform inspection procedure for every facet of the drug business, from manufacturers, transporters and wholesalers to doctors and druggists. The broad language was included for unforeseen contingencies in a broad field, not as a nefarious plan to search the premises of people in these professions without the usual search warrant if they are suspected of other criminal activities. No one has tried to do that in this case. If and when such a perversion of this procedure takes place, it can be dealt with by the courts in due course. Until then, the broad language does not render the section either vague or overly broad as to the scope of the inspection.

The breadth of the statutory language as to the place of the inspection creates a somewhat thornier problem. Controlled premises are defined in § 880(a) as:

(1) places where original or other records or documents required under

---

1. Although the statute provides that "a warrant . . . shall not be required . . . in any . . . situations where a warrant is not constitutionally required" 21 U.S.C. § 880(c) (5), *Biswell* makes the existence of a statute carefully defining the time, place and scope of an allowable inspection a prerequisite of a valid inspection without a warrant. The only such definitions in 21 U.S.C. § 880 relate only to the warrant procedure. There is no indication that they would have been drafted as they were absent the warrant procedure. Thus, this Court is not impressed with the facile argument

that *Biswell* and § 880(c) (5) combine to make a warrant unnecessary in all cases. A warrant remains the necessary standard procedure, since there is no statute defining specific standards for warrantless inspections in terms of time, place and scope, unless and until Congress sees fit to change the statute.

2. 21 U.S.C. § 880(b) (2). This clearly contemplates entry over refusal of permission, since § 880(c) (1) specifically says that the warrant is not even necessary "with the consent of the owner, operator, or agent in charge of the controlled premises".

this subchapter are kept or required to be kept, and

(2) places, including factories, warehouses, or other establishments, and conveyances, where persons registered under section 823 of this title (or exempted from registration under section 822(d) of this title) may lawfully hold, manufacture, or distribute, dispense, administer, or otherwise dispose of controlled substances.

■ Taken at its broadest, a place where persons registered under § 303 may lawfully hold controlled substances could be anyplace, since a doctor is required to register under § 303 and may carry controlled substances with him in making house calls, etc. However, to read statutory language so broadly would be, again, to take it out of context. Again it should be remembered that the warrant procedure here described was created for many activities. Congress could not possibly list all the types of places where such activities might be principally carried out. To attempt such a list would be to invite the disaster of an unforeseen omission. Still, this provision may not be presumed to be a a nefarious attempt to render all places a doctor owns, inhabits or frequents "inspectable". Such a presumption would unnecessarily attribute to Congress an intent to authorize inspections not limited in terms of place, contrary to the ruling and spirit of both *Camara* and *Biswell*. There is another more probable reading of the language. Each profession which deals with the manufacture or distribution of controlled substances has its own peculiar premises which are the proper subjects of inspection. This section makes them all the proper subject of inspection. In the case of a doctor, it is prima facie his principal place of practice, which he is required to register by its address under 21 U.S.C. § 822(e) and 26 C.F.R. 301.23. Without independent proof that some other premises is being used lawfully to store stocks of controlled substances

or required records, this in this Court's opinion is all that may be inspected under this warrant procedure. (Information that some other place is being used *unlawfully* to store such drugs would properly be grounds for a traditional search warrant.) But as long as the warrant is issued for such premises registered by the party to be inspected himself under the act, the language of the act is being followed in letter and spirit and the warrant suffers no infirmities in terms of the limitation on the place to be inspected. Any possible abuses of the breadth of the statutory language may be dealt with, again, when and if they arise.

■ In the instant case the statutory procedure was followed in the issuance of the warrant. The address of the Montrom premises was obtained from a computer printout of doctors' principal place of practice derived from the forms filed by Dr. Montrom himself. While the source of the address was not made clear in the affidavits supporting the warrant, there was sufficient information for the magistrate to infer that it was properly the address of the "establishment" which was a controlled premises within both the letter and spirit of § 880. While it would have been better to set out the source of the address in the supporting affidavit, it is not an error of Constitutional dimensions not to have done so when, as in this case, so much was supplied and the source was, in fact, the proper source which the magistrate could rightly infer it to probably have been from the face of the affidavit.

■ Along the same line, assuming that the inspector who obtained the warrant knew the premises to be a combined dwelling and office, it might have been better to limit the warrant to the professional premises specifically. However, the premises are defined as "Stanley C. Montrom, D.O., 1186 North Oakhurst Drive, Slatington, Pa.". The inclusion of Dr. Montrom's name and professional title might be interpreted as a limitation of the inspection warrant scope, at least

initially, to the professional offices, and since the actions of the inspecting agents seem to indicate that this was their understanding of the warrant, this ambiguity must be resolved in favor of the Government. The warrant was not overly broad in terms of place.

The things to be inspected in the warrant are all proper subjects of inspection under the discussion supra. The warrant was not overly broad with respect to scope, and further, we find that the warrant was not unreasonably broad as to time.

■ The statute directs that the warrant be served "during business hours". § 880(d) (2). The warrant, issued on a converted search warrant form, directed that it be served "in the daytime", but it was, in fact, served during business hours at 1:30 p. m. Considering the actual service in accordance with the statute, the difference between "daytime" and "business hours" does not appear to this Court to be significant, especially when related to doctors who have vastly variable "business hours".[3]

■ Lastly, the standard of probable cause required in the statute is that it appear that there be "a valid public interest in the effective enforcement of this title or regulations thereunder sufficient to justify administrative inspections . . . in the circumstances specified in the application for the warrant." § 880(d) (1). This is a proper standard of probable cause for such a warrant under See v. Seattle, supra. The affidavit on the application in question, by setting out Dr. Montrom's mammoth purchases of amphetamines and barbiturates, amply satisfied this requirement.

In summary, the statute authorizing the warrant is valid and the warrant was valid as obtained. Now we turn to the execution of the warrant.

■ When the inspectors arrived at Dr. Montrom's premises, they proceeded into his professional offices to serve their warrant. They found him there, already in custody. It is irrelevant whether or not they knew the local police were coming to arrest him. As long as each group proceeded only on its proper authority, their coordination is not illegal.

The Federal inspectors served Dr. Montrom with a copy of their warrant and demanded to see his records and stocks of drugs. If they had proceeded to inspect without inquiry they might have exceeded their authority. They did not.

■ Dr. Montrom produced no records or stocks of drugs and pointed none out. If Dr. Montrom had produced what appeared to be complete records and stocks, perhaps the inspectors would have had to accept his word and delay further investigation until these were audited or inventoried. He did not. He replied that the records and stocks of drugs were "all over the house", indicating the dwelling and other parts of the premises. Having thus indicated, he offered no more assistance.

If the inspectors had entered Dr. Montrom's dwelling area before his response, this Court would have suppressed the evidence in this case. They did not enter until Dr. Montrom indicated that the entire structure was a storage area for his principal place of practice. This Court feels that they then had a right to inspect it under their warrant. Since he didn't volunteer to point out all the places where his records and stocks were kept (they turned out to be many and bizarre) they had the right to search as carefully and minutely as reasonably need be to find the proper subjects of their inspection. That this turned out to be a thorough search does not make it any less authorized by their warrant. A less thorough search would not have

---

3. It is hoped that this form will be changed to reflect the proper statutory language.

yielded that which they had a right to inspect. That the Federal inspectors enlisted local police help in this large job is certainly acceptable if the acts performed were acceptable, especially since a Federal inspector accompanied the local officers who were so enlisted at all times.

The procedure followed in this case was no less an inspection for its being broad and minute. Its breadth and minuteness was brought on and necessitated by defendant's own failure to keep his records and inventories in order or to cooperate in their production.

■ During the course of this valid inspection, certain guns obviously in violation of Federal law and therefore contraband were come upon. Obvious contraband come upon in the course of legal activity must be seized and is not thereby rendered inadmissible.

This Court is fully cognizant of the dangers to cherished rights which might arise were "inspections", with their attendant lower standards of probable cause, not carefully scrutinized to make sure that they are not being used, in fact, as disguised searches. Here, however, we fail to see what nefarious activity might be promoted by the principle that a valid warrant covers all the premises the proprietor voluntarily admits are part of the storage area for the principal place of practice in a combined dwelling and professional premises.

The burden and the privilege is then with the person who has such an establishment to define the scope of his professional premises. While the officers could not properly assume that his dwelling was part of his office and "inspect" it without some clear evidence of that fact, neither can the practitioner be allowed to submit a general address as his registered premises and then escape valid inspection by admittedly intermixing his inventory storage space with his dwelling space. The defendants' Motion for Suppression is denied.