COMMONWEALTH vs. ANTHONY ACCAPUTO, JR.

Suffolk. January 8, 1980. — April 18, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Constitutional Law,* Search and seizure, Admissions and confessions. *Search and Seizure,* Administrative inspection, Warrant. *Probable Cause. Controlled Substances. Evidence,* Admissions and confessions.

The relevant principles of law set forth with respect to administrative inspections of "controlled premises" under the Controlled Substances Act, G. L. c. 94C. [441-445]

An administrative inspection warrant issued "pursuant" to G. L. c. 94C, § 30, to a police officer to conduct an "administrative inspection" of certain controlled premises, a pharmacy, which did not contain a statement of the purpose of the inspection, nor a description of the items to be inspected and seized, nor even a mention of seizure in general terms, was insufficient to support legality of the seizure of items taken. [445]

The insufficiency of an administrative inspection warrant to support legality of the seizure of controlled substances in a pharmacy by police officers was not cured by a reference to the unattached application for the warrant, although the application requested authorization "to seize any and all items which are used in violation of any provision of Chapter 94C, M.G.L. or . . . which are themselves contraband." [446]

Statement of the requirements of a valid seizure of articles in premises by police officers under the plain view doctrine. [446-448]

Where police officers had a right to be in the prescription area of a pharmacy under an administrative inspection warrant issued pursuant to G. L. c. 94C, when they observed the butt handle of a gun on top of a refrigerator, and observed that the serial numbers of the gun had been removed, and observed an open shopping bag containing plastic bottles, with their lot numbers removed, which contained pills, and where statements of the manager of the pharmacy gave the officers reasonable grounds to believe that the bag containing drugs was related to violations of c. 94C and to the crime of receiving stolen property, the bag and the gun were validly seized under the plain view doctrine. [448-450]

A warrantless seizure of bottles of drugs in plain view on the shelves of a pharmacy by police officers did not meet the requirement of discovery

by inadvertence needed to lend validity to the seizure, and the deficiency was not cured by statements in the application for an inspection warrant under G. L. c. 94C, [450-451]; seizure of various records from the pharmacy files allegedly reflecting violations of the statute was not inadvertent, and the pretrial motion of the manager of the pharmacy to suppress the drugs seized from the shelves and the various records should have been granted [451].

The manager of a pharmacy asked to come there from his home by police officers holding an administrative inspection warrant issued under G. L. c. 94C, and who was questioned at the pharmacy amidst his employees and occasional customers and made various inculpatory statements during the day of inspection, but who was not arrested on that day, remaining in the pharmacy and closing it up after the officers had left, was not subjected to a custodial interrogation, and no Miranda warnings were required, and the manager's pretrial motion to suppress the statements was rightly denied. [451-452]

INDICTMENTS found and returned in the Superior Court Department on October 16, 1978.

A pretrial motion to suppress evidence was heard by *Barton*, J.

An application for an interlocutory appeal was allowed by *Braucher*, J., and the appeal was reported by him.

*Ira D. Feinberg (Marc S. Seigle* with him) for the defendant.

*Brian F. Gilligan*, Assistant District Attorney, for the Commonwealth.

LIACOS, J. On May 31, 1978, an administrative inspection warrant was issued by a judge of the Municipal Court of the City of Boston directing a State police officer to conduct an administrative inspection of the Commercial Wharf Pharmacy. On June 1, 1978, the officer, accompanied by five other police officers and a special agent of the Board of Registration in Pharmacy, executed the warrant. During the course of the inspection the police discovered and seized various items, including a gun, a shopping bag containing drugs, drugs from the shelves of the pharmacy, and certain records. In response to police interrogation, the defendant made inculpatory statements relating primarily to the gun and the shopping bag containing drugs. The defendant An-

thony Accaputo, Jr., was not arrested that day, but registration of the pharmacy was suspended by order of the Board of Registration in Pharmacy. See G. L. c. 94C, §§ 13-14.

The defendant subsequently was indicted on two counts of receiving stolen goods, one count of unlawfully defacing, mutilating, and obliterating the serial and identification numbers of a firearm, and thirty-six counts of unlawfully distributing and dispensing narcotic drugs in violation of G. L. c. 94C. The defendant's motion to suppress the evidence seized and his statements and for the return of property illegally seized was denied after a hearing in the Superior Court.[1] The defendant's application for interlocutory appeal was allowed by a single justice of this court.

The defendant claims that the motion judge erred in denying his motion to suppress. To support this claim he argues that the seizure of all items was illegal because the administrative inspection warrant contained no specific authority to seize any item; that an administrative inspection warrant issued pursuant to G. L. c. 94C cannot support a detailed, general search of the premises to be inspected; and that the search of the defendant's premises and the seizure of his property exceeded the reasonable scope of an administrative inspection. As to the inculpatory statements made by him, the defendant claims that they were illegally obtained in violation of his constitutional rights as defined in *Miranda* v. *Arizona*, 384 U.S. 436 (1966). We shall state the facts, as found by the judge, at relevant points of this opinion. Before reaching the question of the merit of the defendant's claims we think it appropriate to set forth the relevant principles of law.

We consider first the reach of the Fourth Amendment to the United States Constitution with respect to the Controlled

---

[1] The judge filed findings of fact, rulings of law, and an order denying the motion. He found that "[t]he property seized included what appeared to be diluted Tussionex suspension, drugs with lot numbers removed, drugs with labels removed, order forms and prescriptions that appeared to be altered, photocopies, uncancelled, undated, or telephone orders for amphetamines."

Substances Act, G. L. c. 94C, inserted by St. 1971, c. 1071, § 1. Section 30 of the Act sets forth the procedures relative to administrative inspections of "controlled premises." "Controlled premises" are defined as "any place or area, including, but not limited to any building, conveyance, warehouse, factory, or establishment, in which persons registered under the provisions of this chapter or required thereunder to keep records, are permitted to hold, manufacture, compound, process, distribute, deliver, dispense, or administer any controlled substance or in which such persons make or maintain records pertaining thereto." G. L. c. 94C, § 30 (*a*).

The commercial nature of "controlled premises" does not preclude Fourth Amendment protection. *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307, 311 (1978). *See* v. *Seattle*, 387 U.S. 541, 543 (1967). "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant." *Marshall* v. *Barlow's, Inc., supra* at 312, quoting from *See* v. *Seattle, supra* at 543. Unless some recognized exception to the warrant requirement applies, a warrant is required to conduct an administrative inspection. *Marshall* v. *Barlow's, Inc., supra* at 313. The United States Supreme Court has recognized that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy, see *Katz* v. *United States*, 389 U.S. 347, 351-352 (1967), could exist for a proprietor over the stock of such an enterprise. Liquor (*Colonnade*[2]) and firearms (*Biswell*[3]) are industries of this type." *Marshall* v. *Barlow's, Inc., supra* at 313. Inspections of such pervasively regulated business "may proceed without a warrant where specifically authorized by statute." *United States* v.

---

[2] *Colonnade Catering Corp.* v. *United States*, 397 U.S. 72 (1970).

[3] *United States* v. *Biswell*, 406 U.S. 311, 317 (1972).

*Biswell,* 406 U.S. 311, 317 (1972). See *Colonnade Catering Corp.* v. *United States,* 397 U.S. 72 (1970). "The reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute." *Marshall* v. *Barlow's, Inc., supra* at 321.

General Laws c. 94C does not authorize warrantless inspections, absent consent or exigent circumstances described by § 30 (g). G. L. c. 94C, §§ 11, 30, 47; cf. § 41 (arrest without warrant). Thus, while it could be argued that the drug business engaged in by the defendant is a pervasively regulated business,[4] in regard to which a warrantless inspection is constitutionally permissible, such a warrantless inspection is precluded by the statute.[5] The inspection in the case at bar does not fit into the limited class of exceptions where a warrant is not required. See *United States* v. *Montrom,* 345 F. Supp. 1337, 1340 n.1 (E.D. Pa. 1972), aff'd, 480 F.2d 919 (3d Cir. 1973). Nor are the statutory exceptions to the warrant requirement in issue here.

The companion cases *Camara* v. *Municipal Court of the City & County of San Francisco,* 387 U.S. 523 (1967), and *See, supra,* are central to an analysis of the interplay between the warrant requirement contained in G. L. c. 94C, § 30, and the protections afforded by the Fourth Amend-

---

[4] See, e.g., the Controlled Substances Act, G. L. c. 94C; Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq.; Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. We need not reach the question whether a pharmacy is a pervasively regulated business within the meaning of *Colonnade Catering Corp., supra,* and *United States* v. *Biswell, supra,* in light of the warrant requirement contained in G. L. c. 94C, § 30.

[5] In *Colonnade Catering Corp., supra,* Federal inspectors conducting a warrantless search of a liquor business pursuant to 26 U.S.C. § 5146(b), and 26 U.S.C. § 7606 (1976), forcibly entered a locked storeroom. Where the statute did not authorize forced entries, the Court held that the Fourth Amendment required suppression of the items seized. *Id.* at 77. In reaching this result the Court indicated that "Congress has broad power to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand." *Id.* at 76. However, "[w]here Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Id.* at 77.

ment. In *Camara*, the Court held that a residential occupant had a right to insist that a city housing inspector obtain a warrant prior to inspecting the premises for building code violations. Similarly, in *See*, the Court held that a commercial occupant could not be convicted for refusing to consent to a warrantless inspection for fire code violations. While requiring a warrant, however, the Court held that the standard of probable cause required to obtain an administrative search warrant is less stringent than the standard for a search pursuant to a criminal investigation. *Camara, supra* at 535-539. The Court stated, "In cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." *Id.* at 534. The Court went on to state that "reasonableness" is determined "by balancing the need to search against the invasion which the search entails. . . . [B]ecause the inspections are neither personal in nature nor aimed at the discovery of evidence of crime, they involve a relatively limited invasion of the urban citizen's privacy." *Id.* at 537. The Court described the standard of probable cause required to obtain an administrative search warrant in the following terms: "'[P]robable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building, . . . or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling. . . . If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant."[6] *Id.* at 538-539.

---

[6] In *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307 (1978), the Court discussed the *Camara* probable cause standard in the context of an administrative inspection under Section 8(a) of the Occupational Safety and Health Act of 1970. 29 U.S.C. § 657(a). The Court stated: "For purposes of an ad-

The lesser standard of probable cause required to obtain an administrative inspection warrant is inexorably linked to the limited scope of an administrative search. The procedures relative to administrative inspections set forth in G. L. c. 94C, § 30, provide for both this limitation in the scope of the search and the lesser probable cause standard. General Laws c. 94C, § 30 (*b*), defines the probable cause requirement under the Drug Control Act in terms strikingly similar to the probable cause standard articulated in *Camara*.[7] "For the purposes of the issuance of administrative inspection warrants, probable cause exists upon a showing of a reasonable and valid public interest in the effective enforcement of this chapter or rules or regulations hereunder under a general plan sufficient to justify administrative inspection of an area, premises, buildings or conveyances in the circumstances specified in the application for such warrant." G. L. c. 94C, § 30 (*b*).

---

ministrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' *Camara* v. *Municipal Court of the City & County of San Francisco*, 387 U.S. at 538. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights" (footnotes omitted). *Marshall* v. *Barlow's, Inc.*, *supra* at 320-321.

[7] The language contained in G. L. c. 94C, § 30 (*b*), tracks the probable cause requirement set forth in the Comprehensive Drug Abuse Prevention Act of 1970, 21 U.S.C. § 880 (1976). In fact, the entire § 30 of c. 94C tracks § 880 of the Federal act. The legislative history of the Federal act indicates that the "provisions authorizing the issuance of judicial warrants for administrative inspections under the bill [were] inserted because of the Supreme Court's decisions in *Camara* v. *Municipal Court*, 87 S. Ct. 1727, 387 U.S. 523, 18 L.Ed. 2d 930 and *See* v. *Seattle*, 87 S. Ct. 1739, 387 U.S. 541, 18 L.Ed 2d 943, both decided on June 5, 1967." H.R. Rep. No. 91-1444, 91st Cong., 2d Sess., reprinted in 1970 U.S. Code Cong. & Ad. News 4566, 4623. We note that *Colonnade Catering Corp.* v. *United States*, 397 U.S. 72 (February, 1970), had also been decided prior to the enactment of 21 U.S.C. § 880 (October, 1970).

In conformity with the teaching of *Camara* that this lesser standard of probable cause is justified on the basis of the limited nature of the intrusion attendant to an administrative inspection, G. L. c. 94C, § 30, carefully limits the scope of administrative inspections. Administrative inspection warrants issued pursuant to G. L. c. 94C, § 30, authorize entry for the limited "purpose of inspecting, copying and verifying the correctness of records, reports or other documents required to be kept by a registrant on controlled premises and for the seizure of property appropriate to such inspection." G. L. c. 94C, § 30 (*a*). The statute goes on to limit strictly the scope of the inspection to the limited purpose of the inspection: "(*f*) A person executing an administrative inspection warrant may: (1) use reasonable force and means to execute the warrant; (2) inspect and copy records required by this chapter to be kept; (3) inspect, within reasonable limits and in a reasonable manner, controlled premises and all pertinent equipment, finished and unfinished material, containers and labeling found therein, and except as provided in subsection (*h*),[8] all other things therein, including records, files, papers, processes, controls, and facilities bearing on violation of this chapter; and (4) inventory any stock of any controlled substance therein and obtain samples thereof." G. L. c. 94C, § 30 (*f*).

An administrative inspection warrant can support only this limited type of intrusion; it cannot support the type of search attendant on a criminal investigation. Such a warrant certainly cannot support a general exploratory search for incriminating evidence. See *Camara, supra* at 537; *United States* v. *Montrom,* 345 F. Supp. 1337, 1343 (1972). See also *Marron* v. *United States,* 275 U.S. 192 (1927). Thus, where an administrative inspection exceeds the limited scope set forth in G. L. c. 94C, § 30, and described in *Camara,* both a statutory and a constitutional violation oc-

---

[8] General Laws c. 94C, § 30 (*h*), provides: "An inspection authorized by this section shall not extend to financial data, sales data, other than shipment data, or pricing data unless the owner, operator, or agent in charge of the controlled premises consents in writing."

cur. Moreover, a warrant obtained upon a lesser showing of probable cause must, itself, reflect the limited nature of the search and seizure which it authorizes. The warrant must contain a statement of purpose which is consistent with the permissible purposes set forth in G. L. c. 94C, § 30 (a). G. L. c. 94C, § 30 (c). The warrant must also identify the premises to be inspected and describe the types of property to be inspected or seized, if any. *Id.*[9] Not only does G. L. c. 94C, § 30 (c), require these limitations to appear on the face of the warrant, but the Fourth Amendment also requires that the warrant be drafted in such a way as to apprise the owner of the reason for the inspection and the "lawful limits of the inspector's power to search." *Camara, supra* at 532. *United States* v. *Montrom, supra* at 1339. The warrant serves to "advise the owner of the scope and objects of the search beyond which limits the inspector is not expected to proceed" (footnote omitted). *Marshall* v. *Barlow's, Inc.,* 436 U.S. 307, 323 (1978).

The warrant in the case at bar does not contain a statement of the purpose of the inspection; nor does it contain a description of the items to be inspected and seized; nor does

---

[9] General Laws c. 94C, § 30 (c), sets forth these and other requirements relative to the warrant:

"(c) An administrative inspection warrant shall issue only upon affidavit sworn to before the court or justice establishing the grounds for issuing the warrant. If the court or justice is satisfied that grounds for the issuance of such warrant exists [*sic*] or that there is probable cause to believe they exist, he shall issue such warrant identifying the area, premises, buildings or conveyances to be inspected, the purpose of the inspection, and, if appropriate, the type of property to be inspected, if any. Such warrant shall:

"(1) be directed to the commissioner or his designee, except in the case of a pharmacy to the commissioner or to the designee of the board of registration in pharmacy, or to a police officer;

"(2) command the person to whom it is directed to inspect the area, premises, buildings or conveyances identified for the purpose specified and, if appropriate, direct the seizure of the property specified;

"(3) describe the item or types of property to be inspected or seized, if any;

"(4) direct that it be served during normal business hours."

it even mention seizure in general terms.[10]  The defendant does not argue that the warrant was insufficient to support the inspection,[11] but he does assert that the seizure of items from the pharmacy was illegal.  We agree that the warrant was insufficient to support the seizure.  The warrant failed to comply with the requirements of G. L. c. 94C, § 30 (c), both in its failure to direct seizure and in its failure to describe the items to be seized.  It contained no limits on the inspector's discretion.  See *Marshall* v. *Barlow's, Inc., supra*

---

[10] The warrant states: "Proof of affidavit having been made this date before me, Assoc. Justice of the B.M.C. — A. Frank Foster, by Cpl. William R. Sutherland, a duly authorized Police Officer, of the Massachusetts State Police, Diversion Investigative Unit, WE THEREFORE COMMAND, Cpl. William R. Sutherland, [p]ursuant to said SECTION 30 of CHAPTER 94C, to conduct during the hours of 9:00 A.M. and 8:00 P.M., on Monday through Friday of any week, an Administrative Inspection of the Controlled Premises at 12 Commercial Wharf South, Boston, Mass., which comprise the Controlled Premises of Commercial Wharf Pharmacy managed by Anthony Accaputo, Jr."

[11] At the hearing below on the defendant's motion to suppress, the judge inquired of defense counsel: "[D]o you dispute the fact that under Chapter 94C the officers had the authority to at least perform an administrative search?"  The following colloquy ensued:

COUNSEL FOR THE DEFENDANT: "No.  I think the word is 'inspection,' Your Honor."

THE JUDGE: "Or an administrative inspection?"

COUNSEL FOR THE DEFENDANT: "I think they could have gone in and inspected the inventory, the prescription blanks, the narcotic drug blanks, the biennial books — . . . [the statute] spells out what they can search for [G. L. c. 94C, §§ 30 (a) and (f) read, in part, into the record] . . . ."

THE JUDGE: "Didn't they have the right to look through the blanks, to look through the bottles, to look at the labels?"

COUNSEL FOR THE DEFENDANT: "Yes."

THE JUDGE: "And, assuming for the moment that they had the authority, they were lawfully on the premises, you say, not to seize, but they were lawfully on the premises under 94C to inspect."

COUNSEL FOR THE DEFENDANT: "Right."

The defendant's brief, likewise, fails to raise the issue of the illegality of the search.  It was only at the prompting of the Justices of this court during oral argument that defense counsel asserted the illegality of the search.  See G. L. c. 94C, § 30 (c) (3).  By conceding the issue before the judge at the hearing on the motion to suppress, the defendant has waived any argument as to the validity of the warrant to support an administrative inspection.  On appeal, a different ground for the suppression cannot be argued.  *Commonwealth* v. *Grant*, 352 Mass. 434, 436 (1967).

at 323; *Camara, supra* at 532. The Fourth Amendment requirement that warrants "particularly describ[e] . . . the . . . things to be seized" is aimed at providing such limits on the discretion of the officer executing the warrant. *United States* v. *Marti,* 421 F.2d 1263, 1268 (2d Cir. 1970), cert. denied, 404 U.S. 947 (1971). See *In re Lafayette Academy, Inc.,* 610 F.2d 1 (1st Cir. 1979).

The Commonwealth argues that the warrant should be read in conjunction with the warrant application, which did request authorization "to seize any and all items which are used in violation of any provision of Chapter 94C, M.G.L., or . . . which are themselves contraband." In support of its position, the Commonwealth cites numerous cases where information from an extrinsic document has been incorporated by reference into a warrant in order to supply missing specificity. *United States* v. *Klein,* 565 F.2d 183 (1st Cir. 1977). *Commonwealth* v. *Rugaber,* 369 Mass. 765 (1976). *Commonwealth* v. *Vitello,* 367 Mass. 224 (1975). *Commonwealth* v. *Todisco,* 363 Mass. 445, 448-449 (1973). *Commonwealth* v. *Pope,* 354 Mass. 625, 629 (1968). This argument fails on several grounds. First, in none of the cases cited was the authority to search or to seize omitted. At issue in those cases was whether the description of the place to be searched[12] or the objects to be seized[13] was sufficiently specific. One case involved the issue of the duration of a wiretap being omitted from the warrant.[14] These cases are inapposite; the power to seize is not a detail which can be incorporated by reference into a warrant. We are not inclined to grant, in retrospect, the seizure authority requested in the warrant application and then incorporate that authority, by reference, into the warrant. An extrinsic document simply cannot authorize a power not contained in the warrant itself.

[12] See *Commonwealth* v. *Rugaber,* 369 Mass. 765 (1976); *Commonwealth* v. *Todisco,* 363 Mass. 445 (1973); *Commonwealth* v. *Pope,* 354 Mass. 625, 629 (1968).

[13] See *United States* v. *Klein,* 565 F.2d 183 (1st Cir. 1977).

[14] See *Commonwealth* v. *Vitello,* 367 Mass. 224 (1975).

Second, the application was not attached to the warrant when it was served.[15] There is substantial authority indicating that an affidavit may be referred to for purposes of providing particularity only where the affidavit accompanies the warrant and the warrant uses suitable words of reference which incorporate the affidavit.[16] See *In re Lafayette Academy, Inc., supra* at 4, quoting from *United States* v. *Klein*, 565 F.2d 183, 186 n.3 (1st Cir. 1977). See also *United States* v. *Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976); *United States* v. *Womack*, 509 F.2d 368, 382 (D.C. Cir. 1974), cert. denied, 422 U.S. 1022 (1975); *Huffman* v. *United States*, 470 F.2d 386, 393 n.7 (D.C. Cir. 1971), rev'd on rehearing on another ground, 502 F.2d 419 (1974); *Moore* v. *United States*, 461 F.2d 1236, 1238 (D.C. Cir. 1972). The affidavit was also attached to the warrant in *Todisco, supra,* and *Pope, supra.* These requirements serve not only to circumscribe the discretion of the executing officers but also to inform the person subject to the search and seizure what the officers are entitled to take. *United States* v. *Marti, supra* at 1268. *In re Lafayette Academy, Inc., supra* at 5.

Third, the application which the Commonwealth seeks to incorporate by reference arguably fails to describe with adequate specificity the items subject to seizure. The application contains merely a pro forma recital of all items which

---

[15] While G. L. c. 94C, § 30, the statutory provision for the issuance of administrative inspection warrants authorizing seizure, was specifically referred to in the warrant, a copy of the statute was not attached to the warrant when it was served.

[16] In *Commonwealth* v. *Vitello*, 367 Mass. 224 (1975), the termination date of a wiretap warrant did not appear on the face of the warrant. We read the warrant application in conjunction with the warrant to supply the necessary particularity. While we made no mention of the application being attached to the warrant or of the warrant containing words of reference to the application, we stated that "inadvertent omissions of specific provisions from a wiretap order need not result in suppression of intercepted communications as long as a defendant's constitutional rights are not prejudiced." *Id.* at 272-273. In *Vitello*, the trial judge specifically found that the omission was the result of "error and inadvertence." Cf. *Commonwealth* v. *Rugaber, supra.* The record in the case at bar contains no such finding, nor do we believe such a finding would be warranted on the evidence presented at the hearing.

are seizable under the statute. It is at least arguable that such a list, had it been contained in the warrant, would not be sufficiently particular to satisfy the requirements of the Fourth Amendment. While we need not decide the question at this time, we do say that it is better practice, whenever possible, to frame documentary descriptions in particularized terms. See *In re Lafayette Academy, Inc., supra* at 4 n.4.

Having concluded that the warrant is insufficient to support the seizure of items from the defendant's pharmacy, and that the warrant application cannot cure the insufficiency of the warrant, we now turn to the Commonwealth's contention that the seizure should be upheld under the plain view doctrine. In order for the seizure to come within the plain view doctrine, the officers must have had a prior justification for the intrusion in the course of which the incriminating evidence was seized. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466 (1971). *Commonwealth* v. *Wojcik,* 358 Mass. 623 (1971). The defendant has conceded that the police were lawfully on the premises pursuant to the administrative inspection warrant.[17] Thus, the first requirement of a valid seizure under the plain view doctrine is met. The plain view doctrine further requires that the evidence seized be in plain view, that is clearly visible from a position where the officers have a right to be. The plain view doctrine may be used to justify the seizure only of "article[s] of incriminating character." *Coolidge, supra* at 465. Of course, in the case of "'contraband, the fruits of crime, or other things otherwise unlawfully possessed,' and 'weapons or other things used or likely to be used as means of committing crime' (often called instrumentalities of crime)," the nexus to criminal activity is immediately apparent. *Commonwealth* v. *Bond,* 375 Mass. 201, 207 (1978), quoting from Model Code of Pre-Arraignment Procedure § SS 210-3 (1) (b) & (c) (1975). Other types of evidence ("mere evidence") "may be seized only if the officers recognize it to be plausibly related as proof to criminal activity of which they were

---

[17] See *supra* at note 11.

already aware." *Bond, supra* at 206. The final limitation is that the discovery of evidence in plain view must be inadvertent, unless it is "contraband or stolen goods or objects dangerous in themselves." *Coolidge, supra* at 469-472.

At this point we apply the elements of the plain view doctrine enunciated above to the various items seized in this case. We first consider the gun. The judge found that during the inspection in the prescription area, one of the officers observed the butt handle of a gun on top of a refrigerator and under a countertop. In his findings of fact the judge states: "The gun butt was set back on the top of the refrigerator nine or ten inches from the front of the refrigerator in plain view." We accept this finding of fact. The "determination of the weight of the evidence is the function and responsibility of the judge who saw and heard the witnesses, and not of this court." *Commonwealth* v. *Murphy,* 362 Mass. 542, 547 (1972).[18] As the police had a right to be in the prescription area under the inspection warrant, and the gun was visible from that position, the initial requirements of the "plain view" doctrine are met.

The officer removed the gun and observed that the serial numbers had been removed. A pistol with the serial number obliterated is contraband. *Commonwealth* v. *Pellier,* 362 Mass. 621 (1972). The nexus to criminal activity being immediately apparent, and there being no inadvertence requirement in the case of contraband,[19] the gun was properly seized. See *id.* at 625.

We next consider the seizure of the shopping bag containing drugs. The judge made no findings of fact relative to

---

[18] We distinguish the judge's findings of subsidiary facts, such as the location of the gun, from conclusions, such as the admissibility of the gun under the plain view doctrine. We accept findings of fact if there is no clear error, but the ultimate legal conclusion to be drawn from the fact developed at the hearing is a matter for our review, particularly where the conclusion is of constitutional dimension. *Commonwealth* v. *Mahnke,* 368 Mass. 662, 691, cert. denied, 425 U.S. 959 (1975).

[19] There is, moreover, no indication in the record that the officers anticipated finding the gun on the premises.

the physical location of the shopping bag or whether the contents of the bag were visible. We summarize the testimony presented at the suppression hearing. One of the officers observed a shopping bag at the rear of the pharmacy in front of a desk that was being used to conduct the drug inventory. He brought the bag to the attention of another officer. Both officers testified that the shopping bag contained a smaller bag. Both bags were open and plastic bottles containing pills were clearly visible. The defendant testified that the shopping bag contained possibly two, but at least one smaller bag. He claimed the top of the smaller bag was stapled together. The defendant stated that he observed one of the officers rip the staples apart in order to open the bag. The Commonwealth, on cross-examination of the defendant, presented him with a shopping bag and its contents, including at least one smaller bag. The judge inquired of counsel for the Commonwealth as to the purpose of showing the bags to the defendant. Counsel responded that "[the bags] are not stapled. They were in plain view of the officer . . . ." The defendant's motion to strike this remark, on the ground that the evidence was not before the court, was overruled.[20] The defendant then indicated that he believed the bags to be the same bags that were seized from his pharmacy, but that they were not in the same condition as they were the last time he had observed them.

The judge ruled that all evidence seized was in plain view. Implicit in this ruling was his acceptance of the testimony of the police officers that the smaller bags were open and that the plastic bottles containing pills were visible. We accept this implicit finding. Thus the evidence seized was clearly visible from a position where the officers had a right to be.

The police officers further testified that the plastic bottles containing pills were irregular. Some had no labels, others contained drugs different from the label description, and all

---

[20] The defendant saved his exceptions, but he has not argued before this court that the judge's ruling was error.

had their lot numbers removed. The defendant told the police that he had purchased this bag of drugs from a person whose name he could not disclose.[21] Both the irregularity of the bottles and the defendant's statements gave the police reasonable grounds to believe that the evidence seized was related to criminal activity. The bag containing drugs was plausibly related to violations of G. L. c. 94C, and the crime of receiving stolen property. There being no requirement of inadvertence with respect to the seizure of stolen property,[22] the bag containing drugs was validly seized under the plain view doctrine.

We next consider the various bottles of drugs which were seized from the shelves of the defendant's pharmacy. These drugs were clearly visible from a position where the officers had a right to be. They were plausibly related to violations of G. L. c. 94C as they were allegedly misbranded, unlabeled, missing lot numbers, apparently diluted, or otherwise nonconforming. As these drugs were inventory in a pharmacy, they cannot be characterized as contraband. Neither were they stolen property or property dangerous in themselves.[23] Thus, the inadvertence requirement must be met: the seizure will not be upheld "where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it." *Coolidge, supra* at 470.

The seizure of the drugs on the shelf cannot be characterized as inadvertent. The application for the inspection warrant specifically states that the "[i]nspection is taken in the [p]ublic interest to ensure compliance with the record keeping and inventory requirements of Chapter 94C, M.G.L." The application requests authority to seize: " (b) Controlled substances which are kept, stored, administered, dispensed, or distributed in violation of the provisions of Chapter 94C,

---

[21] The defendant's statements are admissible. See *infra* 451-452.

[22] There is, however, no indication in the record that the police anticipated finding stolen property on the premises.

[23] The pharmacy was no longer open for business after the inspection. The registration was suspended that day by order of the Board of Registration in Pharmacy.

M.G.L., or which constitute evidence of violation of the provisions of Chapter 94C, M.G.L., or the regulations promulgated thereunder. (c) Records files, papers, or other documents which indicate violation of said Chapter 94C, M.G.L., or regulations promulgated thereunder. (d) Samples of Controlled Substances, containers, or labels, whichever, that are evidence of violations of any provisions of Chapter 94C, M.G.L., or the regulations promulgated thereunder, or whenever they are necessary to conduct a reasonable Inspection." The warrantless seizure of the drugs on the shelves cannot be justified under the plain view doctrine; the defendant's motion to suppress should have been granted with respect to these items. See *In re Lafayette Academy, supra.* Cf. *Nardone* v. *United States,* 302 U.S. 379 (1937), *S.C.,* 308 U.S. 338 (1939).

The various records seized from the defendant's files allegedly reflect violations of G. L. c. 94C. The warrant application requested authority to seize such records, and their discovery, like the drugs on the shelves, was not inadvertent. The records were illegally seized, and the defendant's motion to suppress should have been granted with respect to them.

The defendant's motion to suppress also sought to exclude various statements that he made to officers during the inspection of his pharmacy.[24] The defendant contends that he was in custody the moment he arrived at the pharmacy, and should have been given Miranda warnings prior to any questioning by the officers. *Miranda* v. *Arizona,* 384 U.S. 436 (1966). The defendant claims that the Miranda warnings, which were given after his initial statements, were both incomplete[25] and too late.

---

[24] At the hearing on the motion to suppress, officers testified that the defendant made various inculpatory statements during the inspection. There was testimony indicating that the defendant admitted ownership of the gun found on top of a refrigerator; he stated that the gun had been given to him by a friend. There were also conversations relative to the shopping bag containing drugs.

[25] The defendant was advised that "he had the right to remain silent; anything he said could and would be used against him in a court of law;

We first address the preliminary question whether Miranda warnings were required at all in the circumstances of this case. The necessity of Miranda warnings depends on whether there is a "custodial interrogation," that is, whether the defendant has been "deprived of his freedom of action in any significant way." *Commonwealth* v. *Haas*, 373 Mass. 545, 551 (1977), citing *Miranda* v. *Arizona, supra* at 444. The factors to be considered in determining whether the defendant was in custody are set forth in *Haas, supra* at 552-554. One important factor to be considered is the place at which the suspect is questioned. An incommunicado interrogation at the jailhouse has been recognized to be a situation where "the investigator possesses all the advantages. The atmosphere suggests the invincibility of the forces of the law." *Miranda, supra* at 450. See *Haas, supra* at 553. The defendant here, by comparison, was questioned at his pharmacy amidst employees and occasional customers. The setting was not inherently coercive.

Based upon the facts found by the judge at the hearing on the motion to suppress, we cannot say that the defendant was deprived of his freedom of action in any significant way. The defendant was asked to come from his home to the pharmacy; he continued to wait on a few customers; he was never placed under arrest on the day of the inspection; and he remained in the pharmacy after the police officers had left, closing up a short time thereafter. We agree with the judge that the defendant was not subject to a custodial interrogation, and no Miranda warnings were required.

The order of the Superior Court denying the defendant's motion to suppress is affirmed with respect to the gun, the

---

that he had the right to have an attorney with him while he is being questioned; and, if he couldn't afford to hire an attorney, the court would appoint one for him." The officer then asked the defendant if he understood his rights. The defendant responded that he did, and the officer asked him if he wanted to make any statements. Similar warnings were held sufficient in *Commonwealth* v. *Lewis*, 374 Mass. 203 (1978). In that case we stated that "[t]he 'fifth warning' [that the suspect may stop the questioning at any time] is not required by Federal law, and we are not prepared to hold that it is required by State law." *Id.* at 205.

drugs in the bag, and the defendant's statements. The order of the Superior Court is reversed in so far as it denies the defendant's motion to suppress with respect to the drugs seized from the pharmacy shelves, and the various records seized from the defendant's files. The case is remanded to the Superior Court for further proceedings.

*So ordered.*