NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1616                                          Appeals Court

COMMONWEALTH  vs.  MICHAEL W. O'DONNELL.


No. 15-P-1616.

Bristol.      February 14, 2017. - September 21, 2017.

Present:  Maldonado, Massing, & Henry, JJ.


Search and Seizure, Expectation of privacy, Administrative
     inspection, Warrant.  Constitutional Law, Search and
     seizure, Privacy.  Practice, Criminal, Warrant, Sanitary
     code violation.  Electricity.  State Sanitary Code.
     Municipal Corporations, Building inspector.


Complaint received and sworn to in the Taunton Division of
the District Court Department on August 8, 2012.

A pretrial motion to suppress evidence was heard by Mary E.
Heffernan, J., and the case was tried before Thomas L. Finigan,
J.


Jane D. Prince for the defendant.
Yul-mi Cho, Assistant District Attorney, for the
Commonwealth.


MALDONADO, J.  After a jury trial, the defendant was

convicted of fraudulent use of electricity, under G. L. c. 164,

§ 127.  On appeal, the defendant contends that the motion judge

erred in denying his motion to suppress evidence recovered

during a search on his property conducted pursuant to the execution of an administrative inspection warrant. Because we conclude that the authorities exceeded the bounds of the administrative warrant in searching for and seizing evidence of a crime, we reverse.

Background. The defendant, who was representing himself, filed a motion to suppress certain evidence. The motion judge first considered the four corners of the administrative warrant application and determined that the warrant was validly issued. The motion judge then heard testimony from Dennis Machado, the building commissioner for the town of Raynham (town), and Sergeant David LaPlante of the Raynham police, both of whom were present when the administrative warrant was executed. The motion judge made no findings of fact; however, consistent with his denial of the motion, we assume the judge credited the testimony of Machado and Sergeant LaPlante, see Commonwealth v. Houle, 35 Mass. App. Ct. 474, 475 (1993), and therefore, we recite the following facts from their testimony.

The defendant had received citations from the town for keeping trash and "junk" on a property located at 320 Titicut Road. On July 31, 2012, Machado applied for and obtained an administrative warrant to inspect the property and ensure that it was in compliance with local by-laws and the Massachusetts Sanitary Code. Machado testified that he had been advised by

the town's attorney not to contact the owners of the property prior to seeking the warrant. Sergeant LaPlante, nevertheless, visited the property sometime between July 31 and August 1. He unsuccessfully attempted to notify the defendant that the property would be inspected.

On August 1, 2012, Machado visited the property, along with Sergeant LaPlante and a representative from the Raynham board of health, to execute the administrative warrant. Sergeant LaPlante was there solely "to keep the peace," and he followed the town officials as they walked around the property.

As the men were inspecting the property, they noticed there were air conditioners running even though, to their knowledge, electricity to the property had been cut off. The air conditioners were in the rear of the property and were not visible from the street. The men did not observe a generator or other power source. They found "wires just pushed into plugs" outside the house. Machado believed that something illegal might be happening and wanted to investigate further. He contacted the town's electrical inspector and asked the inspector to contact the power company, Taunton Municipal Lighting Plant (TMLP). Sergeant LaPlante also had the police department place a call to the TMLP.

The three men waited for the electrical inspector to arrive. The inspector came onto the property. He examined the

wires and opined that the electrical wires presented a safety hazard; however, the connection point for the wires was not immediately visible. After further inspection, the TMLP representative detected the wires connected to a telephone pole and disconnected the power supply. Machado took photographs of the wires and their connection to the telephone pole. According to Machado, from that point on, "the Police Department handled it."

Sergeant LaPlante seized an electrical cord that went into the house, a wire that had been connected to the electrical cord and then to the service on the telephone pole, and a small green "jumper wire" that was connected to an outside outlet on the house. The defendant was subsequently charged with fraudulent use of electricity and vandalizing property. These items and photographs were admitted at trial, and after a trial by jury, the defendant was found guilty on the fraudulent use charge. He now appeals from the denial of his suppression motion.

Discussion. The defendant raises challenges to both the issuance and the execution of the warrant. He contends the search suffers from deficiencies in the application for the warrant,[1] and its issuance[2] and execution. We focus our review on the last of these challenges.

---

[1] The defendant first contends that the application for the warrant was deficient because, under G. L. c. 111, § 131

1.  Defendant's reasonable expectation of privacy.  We
first address the Commonwealth's argument that the defendant
does not have a reasonable expectation of privacy in the yard in
which the evidence of the connection from the air conditioning
to the telephone pole was discovered because, following a fire,
the house had been condemned.  We are not persuaded.

We note first that there was no evidence presented at the
motion hearing to indicate that the property had been condemned;
the building commissioner testified only that the electrical
power supply to the property had been disconnected after the
fire.  In any event, residents may retain significant privacy
interests even in a fire-damaged home.  Michigan v. Clifford,

(governing inspections for conditions believed to threaten life
or health), and the Massachusetts Building Code, 780 Code Mass.
Regs. § 104.6 (2009), the building commissioner was required to
seek permission to enter the property and could request a
warrant only if the occupant of the property refused entry.
Because we determine that the search exceeded the scope of what
was permitted under the administrative warrant, we express no
view on the merits of this claim.

[2] The defendant also contends that the administrative
warrant was invalid because it was apparently issued using the
standard form for a criminal search warrant and did not identify
the proper legal framework for an administrative warrant.  There
was no question that the warrant was an administrative warrant,
rather than a criminal search warrant, and thus, any defects in
the administrative warrant itself were ministerial and do not
require the exclusion of evidence.  Compare Commonwealth v.
Pellegrini, 405 Mass. 86, 88-89 (1989) (magistrate's inadvertent
failure to sign a warrant, where there is no question the
magistrate intended to issue the warrant, should be deemed
ministerial).

464 U.S. 287 (1984). The evidence here established that, even after the fire, the home remained the defendant's residence. The building commissioner testified that, before obtaining the administrative inspection warrant, he had merely "taken pictures from the road" and had "never entered [the] property." Sergeant LaPlante even visited the residence in search of the defendant prior to the execution of the warrant in order to "give [the defendant] notice that [the inspectors] were coming," and Machado repeatedly referred to the property as "Mr. O'Donnell's home." That ownership right afforded the defendant a continued privacy interest in the house and the curtilage surrounding it. Thus, the defendant "enjoy[ed] full Fourth Amendment protection from search by the authorities." Commonwealth v. Straw, 422 Mass. 756, 759 (1996). See California v. Ciraolo, 476 U.S. 207, 212-213 (1986) (the backyard of a private residence is considered an extension of the home).

Here, the defendant maintained a reasonable expectation of privacy in the portions of the property not visible from the street where additional junk and debris may be stored. Contrast Commonwealth v. Baldwin, 11 Mass. App. Ct. 386, 391 (1981) (no reasonable expectation of privacy in "an open, unfenced, area [surrounding a business] where public inspection is impliedly permitted and probably invited"). The defendant, therefore, has met his threshold burden of showing that he had a reasonable

expectation of privacy in the curtilage surrounding his home and thus that a search, in the constitutional sense, had occurred.

2. Scope of the search pursuant to administrative inspection warrant. The defendant asserts the town exceeded the scope of a permissible administrative inspection under the warrant when the building commissioner, board of health agent, and electrical inspector entered the property and conducted a criminal investigation. We agree, as to the impermissible scope of the investigation.[3]

An administrative inspector may enter a property without the consent of the occupant only after first securing either a search warrant or an administrative inspection warrant. Boston v. Ditson, 4 Mass. App. Ct. 323, 327 (1976), citing Camara v. Municipal Ct., 387 U.S. 523, 534 (1967). These two types of warrant differ greatly.

---

[3] The warrant specifically referenced Machado's affidavit, which established probable cause that there were violations on the property of Raynham General Bylaw § 2/41 and the Massachusetts Sanitary Code, 105 Code Mass. Regs. §§ 410.600 and 410.602 (1994), and requested that Raynham health agent Alan Perry (or his designee) be permitted to join Machado in conducting the administrative inspection. Neither the electrical inspector nor the TMLP representative testified at the motion hearing or at trial, and there is no indication that they obtained any evidence used against the defendant. In certain situations, the police may rely upon civilians to provide material assistance in the execution of search warrants as long as the civilians are properly supervised. See Commonwealth v. Sbordone, 424 Mass. 802 (1997).

A criminal search warrant is issued upon a showing of probable cause to believe evidence of a crime can be found on the premises.  The standard is significantly higher than the standard of proof required for the issuance of an administrative warrant, which permits only an inspection for compliance with regulatory codes.  See Ditson, supra at 328 n.3, citing Camara, supra at 538-539.  "An administrative inspection warrant can support only this limited type of intrusion; it cannot support the type of search attendant on a criminal investigation." Commonwealth v. Accaputo, 380 Mass. 435, 442 (1980).  Moreover, "[s]uch a warrant certainly cannot support a general exploratory search for incriminating evidence."  Ibid.  An administrative inspection that exceeds the limits set forth in the authorizing statute and case law is, therefore, "both a statutory and a constitutional violation."  Ibid.

a.  Terms of the warrant.  An administrative warrant must "specify on its face the purpose, place, and objects of a search."  Commonwealth v. Lipomi, 385 Mass. 370, 375 (1982). These requirements "serve not only to circumscribe the discretion of the executing officers but also to inform the person subject to the search and seizure what the officers are entitled to take [or inspect]."  Ibid., quoting from Commonwealth v. Accaputo, 380 Mass. at 446.  The Supreme Judicial Court has emphasized that "[a]n administrative

inspection warrant, granted under a lesser standard of probable cause than is required in traditional criminal searches and seizures, cannot be used as a device to seize evidence for use in a criminal prosecution."  Commonwealth v. Frodyma, 386 Mass. 434, 438 (1982).

"The proper scope of an administrative warrant . . . is limited by the purpose for which the warrant is sought." Commonwealth v. Jung, 420 Mass. 675, 685 (1995).  Here, the administrative warrant authorized the town to "[i]nspect, view and photograph exterior of property located at 320 Titicut Road, Raynham, MA regarding violations as specified in Affidavit." The town officials exceeded the scope of what they were authorized to inspect.  The affidavit specified that the building commissioner believed that he would find evidence related to violations of Raynham General Bylaw § 2/41 (which regulates the keeping of junk, scrap, and other debris on property that abuts a public way); Raynham Zoning Bylaw § 6.3 (which limits the size of accessory structures and requires building permits therefor in certain circumstances); and the Massachusetts Sanitary Code, 105 Code Mass. Regs. §§ 410.600 and 410.602 (1994) (which require that property be kept free of garbage and rubbish).  Accordingly, at the point in time in which Machado and Sergeant LaPlante engaged the services of the electrical inspector and a member of the TMLP and began

searching for evidence of a crime (that is, the defendant's possible fraudulent use of electricity) rather than simply the defendant's possible violation of either the State sanitary code or the local by-laws listed in the affidavit, the inspection exceeded the terms of the administrative warrant. Compare Jung, 420 Mass. at 686 (administrative warrant invalid due to its undue breadth).

The proper course of action once Sergeant LaPlante suspected the defendant was fraudulently using electricity, therefore, would have been to end the administrative inspection, secure the premises, and obtain a warrant to search for further evidence of criminal activity. See Commonwealth v. Tremblay, 48 Mass. App. Ct. 454 (2000) (motion to suppress properly denied where police conducted a lawful administrative inspection of a salvage lot and, upon discovering a stolen vehicle, terminated the administrative inspection, secured the lot, and obtained a search warrant). Instead, the various inspectors and the police officer began to examine the electrical wires and follow their connections to the telephone pole and the house.

Contrary to the Commonwealth's presentation on appeal, this evidence was not in plain view, as evidenced by Machado's testimony at the suppression hearing. Machado testified, "[T]he TMLP man and myself followed the line, and it came through a little wooded area that [the defendant] has there, and brush,

and the wire was underneath, and came in and connected in an area -- all open connections -- right near the motor home which [the defendant] has, and it goes underneath, and then it ran off to the home -- two sections of the home." Also displaying the extent to which the search went beyond what was in plain view was Sergeant LaPlante's testimony at the hearing that he noticed an extension cord that was plugged into the motor home, which he followed to a black cord that went underneath the motor home and into a wooded area. He followed another extension cord to an outlet underneath the porch, and seized pieces of wire and an electrical cord. In any event, "[government] officials may not . . . rely on [evidence of criminal activity found in plain view] to expand the scope of their administrative search without first making a successful showing of probable cause to an independent judicial officer." Michigan v. Clifford, 464 U.S. at 294. Here, the administrative inspection blossomed into a criminal investigation.

The building commissioner also photographed items beyond what was immediately visible and unrelated to the accumulation of rubbish or trash on the property. In his testimony at the suppression hearing, he described the photographs at length:

> "This one here is the wire that was connected up the
> telephone pole, and as you can see, the jacket is
> burned right off it. That's the telephone pole that
> the wire goes up and makes a connection at the top,
> about ten feet up. This is the one here that the wire

-- shows the wire running along the ground with the jacket actually burned off. You can see it has a grayish look from heat. And this is the ground connections, all open connections. . . . This is the other connections of that same house, running along the ground. This is another connection here, which is running across -- came out of underneath the motor home, heading to the house. And these are all the other connections which were an outside connection that -- I believe that was on the porch area."

Furthermore, the exploratory investigation was also not supported by consent or exigent circumstances. While the electrical inspector indicated that the faulty wiring was potentially hazardous, there is no evidence of an imminent danger. In the absence of these exceptions, therefore, the search was unjustified. See Jung, 420 Mass. at 686.

b. Prejudice. Where evidence is illegally seized, and the error has been preserved, the court considers whether the error was harmless beyond a reasonable doubt. See Commonwealth v. Perrot, 407 Mass. 539, 548-549 (1990); Commonwealth v. Charros, 443 Mass. 752, 765 (2005). The burden is on the Commonwealth to overcome the presumption of prejudice beyond a reasonable doubt. See Commonwealth v. Rios, 412 Mass. 208, 214 (1992). The Commonwealth contends that because the electrical wires were not presented as evidence at trial, the judge's denial of the motion to suppress had no effect on the verdict. We are not persuaded. At trial, the jury also heard testimony regarding Machado and LaPlante's observations during their search for evidence of a

crime.  These observations are also the product of the illegal search.  Accordingly, we cannot say that the Commonwealth has overcome the presumption of prejudice.

Conclusion.  The judgment is reversed and the verdict is set aside.  The order denying the defendant's motion to suppress is vacated, and an order shall be entered allowing the motion and suppressing all physical and testimonial evidence (beyond the observations of running air conditioners) obtained during the search, including photographs and wiring connections.

So ordered.