UNITED STATES of America, Plaintiff,

v.

William C. PUGH, dba Pugh's Boulevard Drugs, Defendant.

No. G75–237 C.A.

United States District Court,
W. D. Michigan, S. D.

Aug. 13, 1976.

J. Terrance Dillon, Asst. U. S. Atty., Grand Rapids, Mich., for plaintiff.

Joseph N. Baltimore, Detroit, Mich., for defendant.

## OPINION

FOX, Chief Judge.

The matter before the court is defendant's motion to suppress the evidence on the ground that a warrantless search and sei-
zure violated his Fourth Amendment rights. The government relies on the fact that the search in question constituted an administrative inspection under the Comprehensive Drug Abuse Prevention and Control Act of 1970 and was thus controlled by 21 U.S.C. § 880. The government's contention is that the defendant consented to the search so that a warrant was unnecessary under § 880(c)(1) and, further, that, regardless of consent, this was a situation where a warrant is not constitutionally required and so the search was legal pursuant to § 880(c)(5).

### I.

The applicable statutory provision, 21 U.S.C. § 880 (1970), was enacted by Congress as part of legislation designed to control drug abuse. It establishes the procedure for inspection of "controlled premises" which include retail pharmacies such as the defendant's. § 880(b)(1) authorizes inspection of such premises in accordance with § 880(b)(2) which provides:

"Such entries and inspections shall be carried out through officers or employees . . . designated by the Attorney General. Any such inspector, upon stating his purpose and presenting to the owner, operator, or agent in charge of such premises (A) appropriate credentials and (B) a written notice of his inspection authority (which notice in the case of an inspection requiring, or in fact supported by, an administrative inspection warrant shall consist of such warrant), shall have the right to enter such premises and conduct such inspection at reasonable times."

According to § 880(c), a warrant is mandated in all but the following situations:

"(1) with the consent of the owner, operator, or agent in charge of the controlled premises;

(2) in situations presenting imminent danger to health or safety;

(3) in situations involving inspection of conveyances where there is reasonable cause to believe that the mobility of the conveyance makes it impracticable to obtain a warrant;

(4) in any other exceptional or emergency circumstance where time or opportunity to apply for a warrant is lacking; or

(5) in any other situations where a warrant is not constitutionally required.".

## II.

 § 880(c)(1) is based upon the established principle that a search conducted pursuant to a valid consent is constitutionally permissible and an exception to the Fourth Amendment's warrant requirement. See *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The question whether there has been a consent is one of fact. *United States v. Fike,* 449 F.2d 191 (5th Cir. 1971); *Perkins v. Henderson,* 418 F.2d 441 (5th Cir. 1969); *Landsdown v. United States,* 348 F.2d 405 (5th Cir. 1965).

In the case at bar, there is a factual dispute as to that question. Both Compliance Investigators testified that, on July 9, 1975, the defendant signed the required notice of inspection after Investigator Larro read the following rights from 21 C.F.R. § 1316.08(b):

"(1) You have the constitutional right not to have an administrative inspection made without an administrative inspection warrant;

(2) You have the right to refuse to consent to such an inspection;

(3) *Anything of an incriminating nature which may be found may be seized and used against you in a criminal prosecution;* (emphasis added)

(4) You have been presented with a notice of inspection as set forth in § 1316.06;

(5) The consent given by you is voluntary and without threats of any kind; and

(6) You may withdraw your consent at any time during the course of inspection."

These rights are found in the Code of Federal Regulations book carried by Investigators. Investigator Larro testified that the defendant was not allowed to look at the book or to read the rights himself. Recently, the rights have been printed right on the notice of inspection but at the time of this inspection they did not appear on the form given to the defendant to sign.

In contradiction to Investigator Larro's description of the general procedure normally used, the defendant denies that those rights were read to him on July 9, 1975. He testified that he signed the notice of inspection after that form, but nothing else, had been read to him.

The notice of inspection signed by the defendant includes the statement, "I have been further informed, verbally, by DEA Compliance Investigator P. Larro of my Rights in accordance with 21 C.F.R. 1316.-08(b)(1)(2)(3)(4)(5)(6)." A single mention of "seizure of property" can be found among the statutory excerpts squeezed on to the reverse side of the form. However, the possibility that the defendant knew that 21 C.F.R. 1316.08(b) entitled him to a reading of more than the notice of inspection form or that he managed to spot the word "seizure" on the back is negated by his testimony that "[h]e wasn't understanding what was written on that paper."

The defendant testified that this lack of understanding is what motivated him on the second day of the inspection, after looking over the form in the interim, to request a repeat of the initial confrontation. Investigator Larro, himself, testified that the defendant at that time asked him to "read me [the defendant] what you [Larro] read me yesterday."

The Investigators testified that they refused to comply with this request because the defendant had a tape recorder running. However, they continued to refuse even after the defendant turned the machine off. Investigator Larro testified that he then asked the defendant if he wanted him to get an administrative warrant to continue the inspection or if he was withdrawing his consent. According to Larro, the defendant

answered, "No, I am not. Do what you have to do."

The defendant testified that he was never asked if he was withdrawing his consent but that he asked if a black Investigator could conduct the inspection and Larro retorted, "Do you understand English? What do you want me to do, go ahead and get a warrant? And the defendant said he answered, "Do whatever you want to do."

■ Consent is not to be lightly inferred, but should be shown by clear and convincing evidence, and any consent must be voluntary and uncoerced. *United States v. Fike,* 449 F.2d 191 (5th Cir. 1971); *Phelper v. Decker,* 401 F.2d 232 (5th Cir. 1968). The government has the burden of proving the alleged consent. *United States v. Miles,* 449 F.2d 1272 (10th Cir. 1971). The government has not met that burden in this case.

On July 9, 1975, the defendant consented to an audit of his pharmacy, not to seizure of his prescriptions to be used in a criminal prosecution. He was approached by two men known not as police officers but as "Compliance Investigators." These Investigators testified that they indicated to the defendant not that they were going to search but that they were going to audit his records. Consequently, the defendant signed a notice of inspection which he testified he thought was like the forms he had frequently signed to show that the state inspectors had made their inspections. It was his lack of understanding of this form which prompted his request for a rereading which was refused.

The rights which would indicate that items could be seized were never read to the defendant. He testified that the Investigators did not tell him that they were seizing anything and that he first learned of their seizures from their boss who came in on July 11, 1975. In fact, the defendant testified that at that time he objected to them taking prescriptions; that he told them that they could copy but not seize them.

■ This is clear and convincing evidence only of a consent to an inspection of the type the defendant had been subjected to

many times before; to an auditing of his records and even to a copying of those records, but not to search and seizure. Therefore, this court finds that there was no consent to the seizure of the prescriptions and that the warrantless seizure was thus not validated by 21 U.S.C. § 880(c)(1).

### III.

■ The government argues that, regardless of consent, the warrantless seizure was authorized by § 880(c)(5). Relying on a standard of reasonableness, the government claims that a search limited in scope is constitutionally permissible in an industry as heavily regulated as the drug industry. However, the statutory language, "in any other situations where a warrant is not constitutionally required," appears not to fall back on a general standard of reasonableness but to refer specifically to the traditional exceptions to the search warrant requirement. Yet, the government is not contending that this search fell into one of those special circumstances categories.

Furthermore, Congress, when drafting the statute, was well aware of the nature of the drug industry and the necessity of balancing limited scope searches against the privacy interest of voluntary participants in a regulated industry. Yet, it still chose to require search warrants with the traditional exceptions, laid out in § 880(c), of consent (1), imminent danger (2), mobility (3), emergency (4), and "other" (5). See, p. 2 *infra.* The structure of the provision logically implies that "other" means hot pursuit and the other established exceptions not specified in §§ 880(c)(1)–(4).

The government retorts that the warrant requirement was included in deference to the Supreme Court decisions of *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), which struck down regulatory searches without warrants in housing and commercial building inspections. See 1970 U.S. Code Cong. & Admin.News 4623. The Court not having spoken on searches of business establishments required by law to

keep records, the government views § 880(c)(5) as having been created as a flexible category able to conform to new Supreme Court developments.

Now, the government maintains, the Court has spoken about such industries and, in light of *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1975), a warrant is no longer required. *Biswell* involved a search pursuant to the Gun Control Act of 1968, 18 U.S.C. § 923(g), and held:

> " . . . [W]here, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant *where specifically authorized by statute.*" 406 U.S. at 317, 92 S.Ct. at 1597. (Emphasis added.)

It is evident that the holding in *Biswell* sustaining warrantless searches is limited to cases where such searches are specifically authorized by statute. Such is the case with the Gun Control Act of 1968 but not with the Comprehensive Drug Abuse Prevention and Control Act of 1970. In the latter, Congress laid out an elaborate scheme of applying for a warrant before a search may be conducted. See 21 U.S.C. § 880(d)(1)–(4). To allow *Biswell* and § 880(c)(5) to combine to eliminate the need for a warrant in all cases would render that warrant scheme meaningless. This analysis of *Biswell* in relation to § 880(c)(5) is found in *United States v. Enserro*, 401 F.Supp. 460 (W.D.N.Y.1975), a recent case which held that a warrantless search and seizure of pharmacy prescriptions under the Comprehensive Drug Abuse Prevention Control Act of 1970 was illegal. This case is directly on point and this court concurs in its decision.

Also significant is that a warrant is extremely easy to obtain under the Act. The usual "probable cause" elements are not required and § 880(d)(1) defines the term as a "valid public interest in the effective enforcement of this subchapter or regulations thereunder sufficient to justify administrative inspections." The weakening of the probable cause requirement is further evidence that Congress already took into account the reasonableness standard urged by the government and balanced the nature of the drug industry against the individual privacy interest when drafting the statute. Given the ease of obtaining administrative search warrants, there is no excuse for not obtaining one as a matter of course or at least as a safety precaution when other validating factors such as consent are questionable.

Therefore, this court finds that the warrantless seizure of prescriptions did not fit into the established exceptions to the warrant requirement and thus was not validated by 21 U.S.C. § 880(c)(5).

## IV.

In this important area of Fourth Amendment rights, the statutory scheme established by the Comprehensive Drug Abuse Prevention and Control Act of 1970 is a reasonable protection, and federal agents should be trained to comply with its provisions. This court holds that the warrantless seizure of defendant's prescriptions violated his constitutional rights and that the evidence seized should be suppressed. Defendant's motion to suppress the evidence is thereby granted.