COMMONWEALTH *vs.* LARRY GRANT.

Suffolk.    February 12, 1979. — March 15, 1979.

Present: ARMSTRONG, BROWN, & KASS, JJ.

*Obscenity*, Knowing dissemination of obscene matter.

At the trial of the manager of a bar for dissemination of obscene
matter, knowing it to be obscene, evidence that the obscene act was
committed by a dancer at the lounge during at most a twenty-
second span when the defendant was tending bar was insufficient
to establish that the defendant had the required knowledge of the
obscene performance where no such transgression had been ob-
served by police officers on at least fifty prior occasions when the
officers had visited the lounge and where there was no evidence
that the defendant was aware of the obscene conduct. [204-205]

COMPLAINT received and sworn to in the Municipal
Court of the City of Boston on March 29, 1977.

On appeal to the Superior Court, the case was heard by
*Carroll*, J., a District Court judge sitting under statutory
authority, and a motion for a new trial was heard by him.

*Daniel G. Harrington* (*Regina L. Quinlan* with him) for
the defendant.

*Clyde R. W. Garrigan*, Special Assistant District Attor-
ney, for the Commonwealth.

KASS, J. Acting on the authority of *Commonwealth* v.
*Thureson*, 371 Mass. 387 (1976), we are constrained to re-
verse the defendant's conviction under G. L. c. 272, § 29,
which proscribes dissemination of obscene matter, know-
ing it to be obscene. On the record before us, we conclude
that the Commonwealth did not carry its burden of prov-
ing that the defendant knew that the offensive act would
be performed, or that it was performed.

We limit our decision to the specific facts which could
have been found from the evidence presented by the Com-

monwealth up to the time it rested and the defendant moving for a finding of not guilty. *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976).

On the night of February 5, 1977, two officers of the Boston Police Department Vice Control Unit, one of them working undercover, visited the 776 Lounge at 675 Washington Street in Boston. At 9:50 P.M. a dancer, Diane Lynn, began performing a striptease dance. By 10:20 P.M. she had removed all her clothes and was performing totally nude.[1] At the latter time she simulated masturbation for a period of from ten to twenty seconds. This was the obscene act complained of and the defendant does not contest that it was obscene. The police arrested Lynn and subsequently issued a complaint against the defendant, who was the manager and a co-owner of the bar. At the time the obscene act occurred the defendant was tending bar.

One of the police officers testified that between December 6, 1976, and February 5, 1977, he had been at the 776 Lounge, in the line of duty, fifty to seventy-five times. The officers testified that, other than the occasion of the Diane Lynn incident on February 5, they had not observed obscene acts at the establishment.

The bar and the stage on which the dancers performed are close to each other, and the wall opposite the bar and stage is lined with mirrors. The defendant could have observed Lynn's performance by turning to the stage or glancing in the mirrors. Neither officer saw the defendant looking at the dancer at the time she made the obscene gesture.

"Knowing" is defined as "a general awareness of the character of the matter." G. L. c. 272, § 31. The concept of "general awareness" does not alter the "constitutional requirement that a defendant have knowledge of the mat-

---

[1] Nude dancing in a barroom was held to be protected expression under art. 16 of the Declaration of Rights of the Massachusetts Constitution. *Commonwealth* v. *Sees*, 374 Mass. 532 (1978).

ter's contents and general character before a criminal conviction for its dissemination may be obtained." *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 383 (1976).

The Commonwealth urges that the generally seamy ambiance of the lounge, which is located in what is euphemistically called the adult entertainment district of Boston, made the defendant aware that something of the ilk of Diane Lynn's caper was bound to happen and so the requisite knowledge must be imputed to the manager of such an enterprise when, in fact, it does happen.

In the *Thureson* case, the defendant was a cashier in a book store which offered the public "peep shows." While the defendant in *Thureson* admitted that she had "a pretty good idea" of the material in the peep shows, she had not herself ever seen them. The court held that the circumstantial evidence was insufficient to enable a fact finder to conclude beyond a reasonable doubt that the defendant had "seen, or should have seen, or otherwise had knowledge of, the material's contents." 371 Mass. at 390.

In view of the fact that in this case the transgression was committed during at most a twenty-second span, when no such transgression had occurred, to the knowledge of the police officers, on at least fifty preceding occasions when they checked out the lounge, nor, on the record before us, at any time before the December 6 through February 5 period which the police testified to, we think that the *Thureson* case requires a conclusion that the Commonwealth failed to prove that the defendant possessed the critical element of scienter. We emphasize the apparently isolated nature of the offending incident in this case and the failure to establish that the defendant had seen it or been made aware of it. We confine our decision to those specific facts.

The judgment is therefore reversed, the finding set aside, and a new judgment is to enter for the defendant.

*So ordered.*