COMMONWEALTH *vs.* SALVATORE LIPOMI.

Middlesex.  April 7, 1981. — March 1, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Narcotic Drugs.  Search and Seizure,* Administrative inspection, Pharmacy.

Evidence seized from a pharmacy pursuant to an administrative inspec-
tion warrant was properly suppressed where the warrant did not meet
the specificity requirements of G. L. c. 94C, § 30, as interpreted by
this court in *Commonwealth* v. *Accaputo,* 380 Mass. 435 (1980).
[373-375]

Evidence obtained in an audit of a pharmacy was properly suppressed,
where warranted findings by the judge established that the audit, by
an inspector for the Board of Registration in Pharmacy, was not made
pursuant to the Board's inspection power under G. L. c. 13, § 25, but,
rather, was made in connection with a police investigation in which
the inspector acted merely as an instrumentality of the police and exer-
cised no independent authority, and where the police were acting in
reliance on a warrant held invalid under G. L. c. 94C, § 30. [375-378]
NOLAN, J., with whom LYNCH, J., joins, dissenting.

Discussion of the applicability of the inspection powers of the Board of
Registration in Pharmacy, set out in G. L. c. 13, § 25, with respect to
administrative inspections conducted as part of a comprehensive regu-
latory scheme for the pharmaceutical industry.  [378-387]

INDICTMENTS found and returned in the Superior Court
Department on November 10, 1978.

Motions to suppress were heard by *Abrams,* J.  An applica-
tion by the Commonwealth for an interlocutory appeal was
allowed by *Liacos,* J., in the Supreme Judicial Court for the
county of Suffolk, and the appeal was reported by him.

*Kevin C. McLean,* Assistant District Attorney, for the
Commonwealth.

*Robert J. Barker, II,* for the defendant.

LIACOS, J.  On May 4, 1978, the same State police officer
who conducted an invalid search under a defective warrant

in the case of *Commonwealth* v. *Accaputo,* 380 Mass. 435 (1980), conducted the search in the case at bar. The warrant used here was a warrant similar to the one held invalid in *Accaputo.* The motion judge in this case held the warrant (issued under G. L. c. 94C, § 30) invalid and ordered the evidence obtained thereunder to be suppressed. The Commonwealth filed an application for interlocutory appeal. Mass. R. Crim. P. 15, 378 Mass. 882 (1979). A single justice allowed the application on December 8, 1980, and reported the appeal to the full bench for decision. We affirm. The facts are as follows.

The defendant, Salvatore Lipomi, is a registered pharmacist, and is the owner and operator of Brunelle's Family Pharmacy Inc. (Brunelle's) in Lowell. On March 22, 1978, Sergeant William Sutherland, a State police officer assigned to the Diversion Investigative Unit, visited Brunelle's in the course of an investigation of the use of invalid prescriptions in the Lowell area. At Sutherland's request, the defendant produced his Schedule 2 prescription book[1] and gave Sutherland written permission to review his prescription files. Upon examination, Sutherland discovered a number of invalid or altered prescriptions, and, with the defendant's consent, took approximately thirty-two of these with him. The defendant indicated at this time that his pharmacy had recently suffered a number of break-ins and thefts.

Sutherland subsequently informed the Lowell police of his investigation of Brunelle's, and on May 3, 1978, he received word from the local police that a break-in had occurred. He arranged for Trooper Richard Hepworth and Joseph LaBelle, an inspector for the Board of Registration in Pharmacy (board), to meet him at Brunelle's the following morning. Before meeting them, Sutherland obtained an administrative inspection warrant under the authority of G. L. c. 94C, § 30. On May 4, at about 10 A.M., Sutherland, Hepworth, and LaBelle entered Brunelle's and Suth-

---

[1] General Laws c. 94C, § 15, requires that such a registration book be maintained by any person registered to dispense controlled substances.

erland presented the defendant with the warrant. LaBelle
identified himself as an agent of the board. Sutherland
gave the defendant Miranda warnings, and requested that
certain documents required for an audit of the pharmacy be
produced.

LaBelle and the two State troopers proceeded to conduct
an audit. LaBelle personally observed inventory forms dat-
ing back to 1976, the defendant's Federal order forms for
Schedule 2 drugs, his prescription files, and his supply of
Schedule 2 drugs on hand. LaBelle took notes regarding
these items. He completed his audit on May 4 and took
nothing with him. Sutherland took some materials with
him on May 4 and returned on May 5, at which time he
seized additional materials. The defendant was subse-
quently named in seven separate indictments for illegally
distributing controlled substances.

The Commonwealth concedes that the warrant authoriz-
ing the inspection in this case failed to meet the require-
ments of G. L. c. 94C, § 30, as interpreted by our decision
in *Commonwealth* v. *Accaputo, supra,* and that the physi-
cal evidence seized pursuant to it must, therefore, be sup-
pressed. The Commonwealth contends, however, that the
results of the audit conducted by LaBelle on May 4, 1978,
are nevertheless admissible in evidence on two grounds.
First, it argues that although the warrant issued to Sergeant
Sutherland could not support the seizure of physical evi-
dence, it was sufficient to support an administrative inspec-
tion. Second, it argues that LaBelle's audit was authorized
by G. L. c. 13, § 25, independent of the sufficiency or in-
sufficiency of the warrant, and that his testimony is admissi-
ble on that basis. We hold that the Commonwealth's first
argument is foreclosed by the principles underlying our
decision in *Commonwealth* v. *Accaputo, supra.* We con-
clude that the judge correctly found that LaBelle's audit
was not within the grant of authority contained in G. L.
c. 13, § 25, and that his testimony based on that audit is
therefore inadmissible against the defendant.

1. General Laws c. 94C, enacted in 1971 (St. 1971, c. 1071), is the current legislative response to the need for regulation of the drug industry and the use of drugs. This statute regulates the trade in controlled substances, legal and illegal, from manufacturer to user. General Laws c. 94C, § 30, provides extensively for administrative inspections of "controlled premises" which are defined by § 30 (*a*), as "any place or area, including but not limited to any building, conveyance, warehouse, factory or establishment, in which persons registered under the provisions of this chapter or required thereunder to keep records, are permitted to hold, manufacture, compound, process, distribute, deliver, dispense or administer any controlled substance or in which such persons make or maintain records pertaining thereto." General Laws c. 94C is a comprehensive legislative plan for the regulation of controlled substances. The statute reflects an informed legislative response to the need to regulate and control the drug industry in balance with the protection of the constitutional rights of individuals.

In *Commonwealth* v. *Accaputo, supra,* we concluded that evidence seized in the course of an administrative inspection must be suppressed because the warrant authorizing the inspection failed to specify the power of seizure, as required by G. L. c. 94C, and to limit the scope of that inspection. We noted in *Accaputo, supra* at 438-439, that, under the rulings of the Supreme Court, business premises as well as residences are included in the Fourth Amendment's protection against unreasonable searches. *Camara* v. *Municipal Court of the City & County of San Francisco,* 387 U.S. 523 (1967). *See* v. *Seattle,* 387 U.S. 541 (1967). While a less demanding standard of probable cause may be required to support the issuance of an administrative search warrant for such premises than is required to support the issuance of a warrant authorizing the type of search attendant on a criminal investigation, "[t]he lesser standard of probable cause required to obtain an administrative inspection warrant is inexorably linked to the limited scope of an administrative search. The procedures relative to adminis-

trative inspections set forth in G. L. c. 94C, § 30 [the Controlled Substances Act], provide for both this limitation in the scope of the search and the lesser probable cause standard." *Commonwealth* v. *Accaputo, supra* at 441.

In *Accaputo,* the defendant challenged only the seizure of certain items from his pharmacy; he did not argue that the inspection itself was unauthorized. We thus had no occasion to consider fully the limitations on administrative inspections imposed by G. L. c. 94C, § 30, nor the requirements of a warrant sufficient to authorize such inspections. The principles governing our analysis in *Accaputo* are, however, by their nature as applicable to administrative inspections as they are to seizures made pursuant to such inspections. We agree with the judge below that, measured by the standards enunciated in *Accaputo,* the warrant here was insufficient to permit the inspection that took place.

As we observed in *Accaputo,* the warrant procedure delineated by G. L. c. 94C, § 30, is specifically designed to ensure that inspections authorized by the statute will meet Fourth Amendment standards of reasonableness. The statute explicitly limits both the purpose and the scope of the inspections it authorizes. See G. L. c. 94C, § 30 (*a*) & (*f*); *Commonwealth* v. *Accaputo, supra* at 442.

A warrant issued pursuant to the statute must specify the purpose of the inspection, G. L. c. 94C, § 30 (*c*) (2), and must "describe the item or types of property to be inspected." G. L. c. 94C, § 30 (*c*) (3), inserted by St. 1971, c. 1071, § 1. These requirements are not mere formalities. "Not only does G. L. c. 94C, § 30 (*c*), require these limitations to appear on the face of the warrant, but the Fourth Amendment also requires that the warrant be drafted in such a way as to apprise the owner of the reason for the inspection and the 'lawful limits of the inspector's power to search.'" *Commonwealth* v. *Accaputo, supra* at 443, quoting from *Camara* v. *Municipal Court of the City & County of San Francisco,* 387 U.S. 523, 532 (1967).

The warrant pursuant to which the inspection was performed in this case specifies neither the purpose of, nor the

property subject to, inspection. These deficiencies may not be satisfied either by the warrant's reference to G. L. c. 94C generally or to the warrant application. The requirements that the warrant specify on its face the purpose, place, and objects of a search "serve not only to circumscribe the discretion of the executing officers but also to inform the person subject to the search and seizure what the officers are entitled to take [or inspect]." *Commonwealth v. Accaputo, supra* at 446. At least where the supporting documents are not served with the warrant at the time of entry, they may not be relied on to remedy the lack of specificity of the warrant itself. *Id. Commonwealth v. Taylor,* 383 Mass. 272, 276-279 (1981).

2. The Commonwealth argues, however, that the fact the warrant was defective to justify either an inspection or a seizure should not end our inquiry. By its terms, G. L. c. 94C, § 30, "shall not prevent entries and administrative inspections, including seizures of property, without a warrant . . . in all other situations in which a warrant is not required by the laws and constitution of the commonwealth or of the United States." G. L. c. 94C, § 30 (g) (5), inserted by St. 1971, c. 1071, § 1. Claiming that the drug industry is a pervasively regulated industry, the Commonwealth further argues that a warrantless administrative inspection may be conducted under G. L. c. 13, § 25. See *United States v. Biswell,* 406 U.S. 311 (1972); *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970).

Even if we conclude that retail pharmacies are a "pervasively regulated" industry,[2] the Commonwealth faces an insuperable hurdle in seeking to vindicate this search and seizure on the basis of G. L. c. 13, § 25. The record clearly establishes that there was no administrative inspection pursuant to that statute, and such was the express ultimate finding of the judge. The judge expressly found and ruled that the May 4 audit was made pursuant to G. L. c. 94C,

---

[2] See our discussion, *infra*.

§ 30; not pursuant to G. L. c. 13, § 25.[3]  The findings of a
trial judge are entitled to substantial deference, and will not
be disturbed unless clearly erroneous.  The findings in issue
here are clearly supported by the record.  *Commonwealth
v. Buchanan,* 384 Mass. 103, 106-107 (1981), and cases
cited.

Agent LaBelle's testimony clearly reveals that he made no
independent determination to audit the records of Brunelle's
on May 4, either as a result of a complaint by the police, or
otherwise; and that he made no independent evaluation of
the reasonableness of the May 4 search with regard to its
purpose, place, time, or scope.[4]  On May 4 LaBelle arrived

---

[3] The judge stated: · "But, the Commonwealth argues that the audit
conducted by Agent LaBelle on May 4, 1978 is admissible in evidence in
accordance with the provisions of M.G.L.A. c. 13, § 25, which statute
authorizes 'agents of the Board of Registration in Pharmacy to inspect
drug stores and all other places of business wherein drugs and medicines
are sold and to report all violations of the laws relating to the pharmacy
and the retail business. . . .'  To this argument, the Court agrees if the
audit conducted on May 4, 1978 by Agent LaBelle was made pursuant to
his authority under Section 25 of Chapter 13.  But such was not the case as
testified to by Agent LaBelle and Cpl. Sutherland.  The audit was done in
accordance with and under the authority of M.G.L.A. c. 94C, § 30.  The
items seized, namely the controlled substances inventory list, the DEA
222C order forms, the distribution files of filled prescriptions and the
biennial audit book containing filled prescriptions of Schedule 2 drugs,
were done in accordance with the administrative inspection warrant (De-
fendant's Exhibit 1) which issued to Cpl. William R. Sutherland and not
in accordance with Agent LaBelle's authority to conduct inspections of
pharmacies under M.G.L.A. c. 13, § 25."

[4] LaBelle testified that his inspections of pharmacies pursuant to G. L.
c. 13, § 25, "vary from strictly administrative, checking compliance to the
rules and regulations of the Board [and] Federal regulations, to conduct-
ing audits . . . by [himself]."  Different inspections might vary in scope
from a simple check of a single schedule to a complete audit, and in time,
from ten minutes to a full day.  In a given month he might visit from zero
to 100 pharmacies.  He had conducted a total of four audits in the two
months prior to the hearing on the motion to suppress.  He testified that
he was assigned to cover a large area of the State.  It was within his
discretion to decide which pharmacies to inspect.  He might plan to visit a
certain territory; for example, "to spend three days in Worcester."  He
also testified that at times he was assigned to work with the police.  When
asked by the judge whether he would go into an area in which the police

at the pharmacy prior to the two police officers "to assist" them in conducting the audit. LaBelle had no knowledge of the officers' March 22 search of the pharmacy, nor was he aware that the police held any suspicions of criminal violations. LaBelle knew nothing of the purpose of the police in conducting the May 4 search. LaBelle did not begin the audit alone or even enter the pharmacy, although he testified that on prior occasions he had conducted unassisted warrantless audits of pharmacies under the authority of G. L. c. 13, § 25. Rather, he waited outside the pharmacy until the police officers arrived. The three entered the pharmacy.

In LaBelle's presence Sutherland presented the defective warrant to the defendant, advised the defendant of his Miranda rights, and requested the defendant to produce the items he wished to audit. LaBelle testified further that, in accordance with a request by the police and because of the "ongoing criminal investigation," he did not report any discovered violations to the board, despite the mandate of G. L. c. 13, § 25, to report all violations discovered pursuant to that statute.

Thus, LaBelle never made an independent determination "under a general plan sufficient to justify administrative inspection" of the pharmacy. G. L. c. 94C, § 30 (*b*). At no time did he exercise independent authority under G. L. c. 13, § 25. In this instance LaBelle was an instrumentality of the police.[5] LaBelle did not exercise any control over the activities of the police.

The judge's ruling on the law was also correct. The judge concluded that, since there was no inspection under G. L.

---

indicated there was a complaint, he responded, "*If the police had a complaint . . . I doubt very much if I would go in on my own. I just might goof up their investigation. I might even stay away from the place until I was asked.*" (Emphasis supplied.)

[5] It is undisputed that the police lacked any ground independent of the defective warrant to search the defendant's pharmacy. Thus, this case is not analogous to situations in which a search conducted pursuant to a defective warrant may be upheld because of the existence of an independent ground to search, not subjectively relied upon by the police.

c. 13, § 25, but rather a search and seizure under a warrant invalid under G. L. c. 94C, § 30, the evidence obtained must be suppressed. General Laws c. 94C, § 30, reflects the Legislature's determination that, absent consent or exigent circumstances, inspection searches *by police* — whether based upon a showing of criminal probable cause or on the lesser administrative standard of probable cause — are subject to the warrant requirement. See G. L. c. 94C, § 30 (*b*), (*c*), (*g*). *Commonwealth* v. *Accaputo, supra* at 439. Searches by the police are inherently more intrusive than purely administrative inspections. Moreover, unlike administrative agents, the police have general criminal investigative duties which exceed the legitimate scope and purposes of purely administrative inspections. Thus, in this context the warrant requirement embodied in § 30 provides an important safeguard. The warrant provides "assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307, 323 (1978).

3. We think it appropriate to further elaborate our views as to the applicability of G. L. c. 13, § 25, to administrative inspections.[6]

In *Colonnade Catering Corp.* v. *United States, supra,* and in *United States* v. *Biswell, supra,* the Supreme Court delineated an exception to the general rule that administrative searches are subject to the warrant requirement of the Fourth Amendment. In *Colonnade,* Federal

---

[6] General Laws c. 13, § 25, as amended through St. 1973, c. 1124, reads: "The board shall appoint no more than six agents who shall be allowed necessary traveling expenses. They shall inspect drug stores and all other places of business wherein drugs, medicines, patent medicines, medical preparations and medical supplies of any kind are sold or distributed, and shall make a report of their doings pertaining thereto to the board, and shall report all violations of the laws relating to pharmacy and the retail drug business and all violations of the rules and regulations of the board. As directed by the board, they shall file criminal complaints against all violators of such laws, rules or regulations."

agents, acting under the authority of a Federal statute permitting warrantless, nonconsensual inspections of the business premises of liquor dealers, forcibly entered a locked storeroom and seized bottles of liquor that the agents suspected had been illegally refilled. Citing the long history of Federal supervision of the liquor trade, the Court held the warrantless inspection provision constitutional. "We agree that Congress has broad power to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand. The general rule laid down in *See* v. *City of Seattle,* [387 U.S. 541, 545 (1967)] 'that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure' — is therefore not applicable here." *Colonnade Catering Corp.* v. *United States, supra* at 76. Because, however, Congress had not authorized forcible entries as a part of the inspection procedure, the Court held that the evidence seized must be suppressed. *Id.* at 77.

In *United States* v. *Biswell, supra,* the Court further defined the scope of its decision in *Colonnade.* Pursuant to a provision of the Gun Control Act of 1968, 18 U.S.C. §§ 921 et seq. (1976 & Supp. III 1979), providing for warrantless inspections of the business premises of firearms dealers, a Federal Treasury agent, accompanied by a local police officer, seized two sawed-off shotguns from a locked storeroom in the defendant's pawn shop. The defendant had opened the storeroom after having been shown the law authorizing the warrantless inspection. The Court upheld the seizure, observing that "[i]n the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute." *United States* v. *Biswell, supra* at 315. The Court acknowledged the power of the Legislature to employ properly limited systems of warrantless inspection as one aspect of regulating businesses with a history of pervasive govern-

ment control. The Court concluded that the warrantless inspection scheme in *Biswell* posed but a limited threat to any justifiable expectation of privacy, since "[w]hen a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection." *Id.* at 316.

Read together, *Colonnade* and *Biswell* "make clear that a warrant may not be constitutionally required when [the Legislature] has reasonably determined that warrantless searches are necessary to further a regulatory scheme and the [governmental] regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Donovan* v. *Dewey,* 452 U.S. 594, 600 (1981). Three factors must be present. "First, the enterprise sought to be inspected must be engaged in a pervasively regulated business. The presence of this factor insures that warrantless inspection will pose only a minimal threat to justifiable expectations of privacy. Second, warrantless inspection must be a crucial part of a regulatory scheme designed to further an urgent [governmental] interest. And third, the inspection must be conducted in accord with a statutorily authorized procedure, itself carefully limited as to time, place, and scope. The presence of this factor guards against the possibility that any inspection right will be abused." *Dunlop* v. *Hertzler Enterprises, Inc.,* 418 F. Supp. 627, 631-632 (D.N.M. 1976). Accord, *State ex rel. Environmental Improvement Agency* v. *Albuquerque Publishing Co.,* 91 N.M. 125 (1977), cert. denied, 435 U.S. 956 (1978). See generally 3 W. LaFave, Search and Seizure § 10.2 (1978).

In *Commonwealth* v. *Accaputo, supra* at 439 n.4, we reserved the question whether the pharmaceutical industry is "pervasively regulated" within the meaning of *Biswell.* In *Marshall* v. *Barlow's, Inc.,* 436 U.S. 307, 313 (1978), the Court noted that "[t]he element that distinguishes these

[pervasively regulated] enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware."

In this State, the regulation of pharmacists dates back at least to 1885. See St. 1885, c. 313, establishing the Board of Registration in Pharmacy. The business premises of dispensing pharmacists have been subject to State inspection since 1914. St. 1914, c. 315. In addition to the comprehensive controls imposed by the State Controlled Substances Act, G. L. c. 94C, pharmacists are subject to a variety of Federal regulatory provisions. A number of courts, both State and Federal, have concluded that the pharmaceutical industry meets the *Colonnade-Biswell* standard of pervasive regulation. See *United States* v. *Jamieson-McKames Pharmaceuticals, Inc.*, 651 F.2d 532, 537 (8th Cir. 1981), petition for cert. filed, 50 U.S.L.W. 3575 (January 19, 1982); *United States* v. *Schiffman*, 572 F.2d 1137, 1142 (5th Cir. 1978); *United States ex rel. Terraciano* v. *Montanye*, 493 F.2d 682, 684 (2d Cir.), cert. denied, 419 U.S. 875 (1974); *United States* v. *Montrom*, 345 F. Supp. 1337, 1340 (E.D. Pa. 1972), aff'd without opinion, 480 F.2d 918 (3d Cir. 1973); *Hosto* v. *Brickell*, 265 Ark. 147, 153 (1979); *People* v. *Curco Drugs, Inc.*, 76 Misc. 2d 222 (Crim. Ct. N.Y. 1973); *Poindexter* v. *State*, 545 S.W.2d 798, 800 (Tex. Crim. App. 1977).

We think the urgency of the State's interest in the inspection of the business premises of pharmacists to be at least as great as the regulatory interests presented by the *Colonnade* (liquor) and *Biswell* (firearms) cases. Certainly, the State has a strong interest in a regulatory scheme which enables it to trace the sale and distribution of drugs, thereby deterring illicit usage wherever possible, and facilitating the detection of the sources of those drugs which are used illicitly. Cf. *United States* v. *Biswell, supra* at 315-316 (discussing the governmental interest in firearms regulation). We thus conclude that retail pharmacies are properly construed to be part of a "pervasively regulated" industry.

We thus reach the question whether G. L. c. 13, § 25, could be, as the Commonwealth contends, a valid statutory authorization for the kind of inspection challenged here. That the Legislature intended to authorize inspections under this statute is clear from its language alone. This reading finds further support in an opinion of the Attorney General dating back to 1924, which broadly construes the inspection powers of the pharmaceutical board's agents. 7 Op. Att'y Gen. 394, 396 (1924).

The defendant argues that any authority to inspect granted by G. L. c. 13, § 25, is invalid, however, because the statute fails to impose appropriate limitations as to the time, place, and scope of such inspections. See, e.g., *United States* v. *Biswell, supra* at 315; *Colonnade Catering Corp.* v. *United States, supra* at 77. In the absence of consent or exigent circumstances, the legality of a warrantless administrative inspection of a pervasively regulated business depends on the authority of a valid statute which carefully limits the inspection authority in time, place, and scope. See *Washington Massage Foundation* v. *Nelson,* 87 Wash. 2d 948 (1976).

General Laws c. 13, § 25, places virtually no limitations on the time and scope of inspections. The Legislature enacted G. L. c. 13, § 25, at a time when the police powers of the State regarding regulatory inspections were perceived to be far broader than they are today. At that time, it was generally assumed that such inspections were not subject to the warrant requirement. See *Frank* v. *Maryland,* 359 U.S. 360, 367-372 (1959). Thus, while establishing that agents shall be appointed by the board and delineating the duties of these agents to inspect pharmacies, § 25, contrary to G. L. c. 94C, § 30, reflects no legislative consideration of the relative weight to be accorded the enforcement needs of the State, on one hand, and the constitutional privacy interests of individuals, on the other. General Laws c. 13, § 25, does not purport to provide the statutory safeguards now required to support warrantless searches of controlled premises.

Nor is there any basis to import into § 25 the limitations appearing in G. L. c. 94C, § 30. These limitations circumscribe searches conducted under the authority of a warrant, not warrantless searches. In *Commonwealth* v. *Accaputo*, *supra* at 439, we said: "General Laws c. 94C does not authorize warrantless inspections, absent consent or exigent circumstances described by § 30 (g). . . . Thus, while it could be argued that the drug business engaged in by the defendant is a pervasively regulated business, in regard to which a warrantless inspection is constitutionally permissible, such a warrantless inspection is precluded by the statute. The inspection in the case at bar does not fit into the limited class of exceptions where a warrant is not required. . . . Nor are the statutory exceptions to the warrant requirement in issue here." (Citations omitted.)

The inspection warrant requirement of § 30 reflects a legislative accommodation of the respective enforcement needs of the State with the privacy rights of individuals with regard to the pervasively regulated pharmaceutical business. This view is supported by the historical context in which G. L. c. 94C was enacted in 1971. In 1967 the United States Supreme Court, in deciding *Camara* v. *Municipal Court of the City & County of San Francisco*, 387 U.S. 523 (1967), and *See* v. *Seattle*, 387 U.S. 541 (1967), struck down warrantless regulatory searches of residential and commercial buildings. In response to *Camara* and *See* Congress enacted the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. §§ 801 et seq. (1976 & Supp III 1979). As part of this comprehensive regulatory scheme Congress provided an inspection warrant procedure. See 21 U.S.C. § 880 (1976).[7]

---

[7] The legislative history regarding 21 U.S.C. § 880 is as follows: "The provisions authorizing the issuance of judicial warrants for administrative inspections under the bill have been inserted because of the Supreme Court's decisions in *Camara* . . . and *See* . . ., both decided on June 5, 1967. . . . The Court held [in both cases that] a warrant was constitutionally required . . . . In deference to these decisions a provision for issuance of judicial warrants for administrative inspections has been inserted in the

One year later the Legislature enacted G. L. c. 94C, the Controlled Substances Act, which expressly incorporates much of the Federal counterpart. General Laws c. 94C, § 30, essentially follows Federal § 880. See *Commonwealth* v. *Accaputo, supra* at 441 n.7. Several Federal cases interpreting § 880 shed considerable light on the congressional intent in enacting that act, and consequently provide guidance in construing the Massachusetts version of the statute:

"It is evident that the holding in *Biswell* sustaining warrantless searches is limited to cases where such searches are specifically authorized by statute. Such is the case with the Gun Control Act of 1968 but not with the Comprehensive Drug Abuse Prevention and Control Act of 1970. In the latter, Congress laid out an elaborate scheme of applying for a warrant before a search may be conducted. See 21 U.S.C. § 880(d)(1)-(4). To allow *Biswell* and § 880(c)(5) [the warrant exception clause analogous to G. L. c. 94C, § 30 (g) (5)] to combine to eliminate the need for a warrant in all cases would render that warrant scheme meaningless." *United States* v. *Pugh*, 417 F. Supp. 1019, 1023 (W.D. Mich. 1976).

"The important point is that Congress, in the Gun Control Act of 1968, had made the determination that it was in the public interest to give the Secretary of the Treasury the authority to enter and inspect premises without the necessity of a warrant. Congress chose not to follow that procedure under 21 U.S.C. § 880. Instead, Congress laid out an elaborate scheme of applying for a warrant before the search may be conducted, with certain exceptions not applicable here." *United States* v. *Enserro*, 401 F. Supp. 460, 463 (W.D.N.Y. 1975).

"Furthermore, Congress, when drafting the statute, was well aware of the nature of the drug industry and the necessity of balancing limited scope searches against the privacy interest of voluntary participants in a regulated in-

bill. . . ." H.R. Rep. No. 91-1444, 91st Cong., 2d Sess., reprinted in [1970] U.S. Code Cong. & Ad. News 4566, 4623.

dustry. Yet, it still chose to require search warrants with the traditional exceptions, laid out in § 880(c), of consent (1), imminent danger (2), mobility (3), emergency (4), and 'other' (5)." *Pugh, supra* at 1022. "[T]he statutory language, 'in any other situations where a warrant is not constitutionally required,' appears not to fall back on a general standard of reasonableness but to refer specifically to the traditional exceptions to the search warrant requirement. . . . The structure of the provision logically implies that 'other' means hot pursuit and the other established exceptions not specified in §§ 880(c) (1)-(4)." *Id.*

"Also significant is that a warrant is extremely easy to obtain under the Act. The usual 'probable cause' elements are not required and § 880(d)(1) defines the term as a 'valid public interest in the effective enforcement of this subchapter or regulations thereunder sufficient to justify administrative inspections.' The weakening of the probable cause requirement is further evidence that Congress already took into account the reasonableness standard urged by the government and balanced the nature of the drug industry against the individual privacy interest when drafting the statute. Given the ease of obtaining administrative search warrants, there is no excuse for not obtaining one as a matter of course or at least as a safety precaution when other validating factors such as consent are questionable." *Id.* at 1023.

"Although Congress, if it desired, could have given the drug agents the authority given to Treasury agents under *Biswell,* it decided not to." *United States* v. *Enserro, supra* at 464. The court in *United States* v. *Montrom,* 345 F. Supp. 1337, 1340 n.1 (E.D. Pa. 1972), stated: "Although the statute provides that 'a warrant . . . shall not be required . . . in any . . . situations where a warrant is not constitutionally required' 21 U.S.C. § 880(c) (5), *Biswell* makes the existence of a statute carefully defining the time, place and scope of an allowable inspection a prerequisite of a valid inspection without a warrant. *The only such definitions in 21 U.S.C. § 880 relate only to the warrant proce-*

*dure. There is no indication that they would have been drafted as they were absent the warrant procedure.* Thus, this Court is not impressed with the facile argument that *Biswell* and § 880(c) (5) combine to make a warrant unnecessary in all cases. A warrant remains the necessary standard procedure, since there is no statute defining specific standards for *warrantless* inspections in terms of time, place and scope, unless and until Congress sees fit to change the statute." (Emphasis added.)

The language of G. L. c. 94C, § 30 lends further support to these views. Section 30 (*b*), as amended by St. 1972, c. 806, § 21, expressly refers "in the case of a pharmacy" to "the commissioner [of public health] or his designee or . . . the designee of the board of registration in pharmacy, or . . . a police officer" as persons to whom a Justice may "issue warrants for the purpose of conducting administrative inspections authorized by this chapter." The language "designee of the board" clearly refers to agents of the board appointed pursuant to G. L. c. 13, § 25. LaBelle testified that he had in the past applied for and obtained a § 30 inspection warrant, and that no persons other than agents conducted inspections for the board. Section 30 (*e*), also expressly referring to designees of the board, permits entrance by agents into controlled premises for the purpose of conducting inspections only "[w]hen authorized by an administrative inspection warrant."

Statutes relating to the same subject matter, enacted at different times, should be construed with common sense to constitute a harmonious body of legislation. Section 30 (*a*) expressly provides "'administrative *inspection* warrants' are warrants for the purpose of *inspecting*, copying and verifying the correctness of records, reports or other documents . . . *and* for the *seizure* of property appropriate to such inspection" (emphasis added). Section 30 (*c*) provides that *inspection* warrants "shall: (1) be directed . . . to the designee of the board . . .; (2) command the [designee] to *inspect* the area . . . identified for the purpose specified *and, if appropriate,* direct the seizure of the property specified" (empha-

sis added). See also G. L. c. 94C, § 30 (e). The interpretation offered here harmonizes the two statutes without rendering nugatory any language in either statute. Despite the warrant requirement of § 30, the board is still required to appoint agents who shall inspect pharmacies, report violations of the law, and file criminal complaints as directed by the board. This is all § 25 requires. · That statute is silent regarding inspection procedures. Those procedures must be drawn from G. L. c. 94C, § 30.

*Order allowing motion*
*to suppress affirmed.*

NOLAN, J. (dissenting, with whom Lynch, J., joins). I dissent. In *United States* v. *Biswell*, 406 U.S. 311 (1972), the United States Supreme Court permitted a warrantless search and seizure of weapons from a pawnshop operator who was licensed under Federal law to deal in sporting weapons. The Court ruled that inspections for compliance with the Gun Control Act of 1968 pose only limited threats to the dealer's justifiable expectation of privacy. *United States* v. *Biswell, supra* at 316. The Court in *Biswell* relied in part, at least, on the premise that "inspection is a crucial part of the regulatory scheme" of the business of selling weapons. *Id.* at 315. It is no less crucial in the business of selling controlled substances.

Unannounced inspections in a pervasively regulated industry serve a healthy purpose. The pharmaceutical industry is pervasively regulated. See *United States* v. *Jamieson-McKames Pharmaceuticals, Inc.*, 651 F.2d 532, 537 (8th Cir. 1981), petition for cert. filed, 50 U.S.L.W. 3575 (January 19, 1982); *United States* v. *Schiffman*, 572 F.2d 1137, 1142 (5th Cir. 1978); *United States ex rel. Terraciano* v. *Montanye*, 493 F.2d 682, 684 (2d Cir.), cert. denied, 419 U.S. 875 (1974); *United States* v. *Montrom*, 345 F.Supp. 1337, 1340 (E.D. Pa. 1972), aff'd without opinion, 480 F.2d 918 (3d Cir. 1973); *Hosto* v. *Brickell*, 265 Ark. 147, 153 (1979); *People* v. *Curco Drugs, Inc.*, 76 Misc. 2d

222 (Crim. Ct. N.Y. 1973); *Poindexter* v. *State*, 545 S.W.2d 798, 800 (Tex. Crim. App. 1977).

The Court in *Biswell* said: "[I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible." *Biswell, supra* at 316. For reasons not dissimilar to those articulated in *Biswell*, the Court in *Donovan* v. *Dewey*, 452 U.S. 594 (1981), sanctioned warrantless searches by Federal mine inspectors acting under the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801 et seq. (Supp. III 1979).

The court today complains that G. L. c. 13, § 25, "places virtually no limitations on the time and scope of inspections." While the authorization contained in § 25 is broad, I think that read in the context of the over-all statutory scheme for the administrative inspection of pharmacies, the legislative scheme meets Fourth Amendment standards of reasonableness. First, as to limitations on the places to be inspected, § 25 is explicit; only "places of business" where drugs "are sold or distributed" may be inspected. Second, § 25 limits the authority of the inspector to reporting violations of "the laws relating to pharmacy" and of "the rules and regulations of the board." I read these references as importing into § 25 the limitations on time, place, and scope of inspection stated explicitly in G. L. c. 94C, § 30. These standards are entirely sufficient to guide the board's inspectors, as well as the courts, in evaluating the reasonableness of any particular inspection. In this case, the audit performed by LaBelle was clearly within the limitations cited above. I further note the absence of any indication that § 25 has ever been used as a pretext to justify searches going beyond statutory or constitutional limits. To require more explicit limitations in § 25 would indeed be to "overread" the Court's holding in *Biswell*. The statute here at issue, G. L. c. 13, § 25, cannot fairly be read as "so seriously

deficient as to render unconstitutional this non-forcible inspection . . . during business hours, by a narcotics agent, of records of a licensed pharmacist, maintained on the premises as required, relating to narcotics and stimulant or depressant drugs." *United States ex rel. Terraciano* v. *Montanye, supra* at 685. See *People* v. *Curco Drugs, Inc.*, 76 Misc. 2d 222, 231-232 (Crim. Ct. N. Y. 1973).

As a practical matter, the warrant procedure established by G. L. c. 94C, § 30, retains its vitality as an essential component of the statutory scheme for enforcing the laws relating to controlled substances. This is particularly evident since G. L. c. 13, § 25, authorizes inspection, but makes no mention of seizure. Because the Legislature "selected a standard that does not include [seizure]," inspectors must obtain valid warrants under G. L. c. 94C, § 30, before evidence may be seized from controlled premises. *Colonnade Catering Corp.* v. *United States*, 397 U.S. 72, 77 (1970). In the instant case, LaBelle's audit was well within the limits established by G. L. c. 13, § 25. Therefore, his testimony concerning his observations should be admissible against the defendant in any criminal proceedings based on these indictments.