COMMONWEALTH vs. PAUL L. CADORET
(and eleven companion cases[1]).

Suffolk. January 14, 1983. — April 13, 1983.

Present: BROWN, ROSE, & SMITH, JJ.

Search and Seizure, Private club, Administrative inspection.

Two warrantless inspections of a social club by police officers, made over
    the objections of the person stationed at the entrance to the club, were
    not authorized under provisions of G. L. c. 140, § 201, which allow
    administrative inspections by police and prescribe a penalty for
    hindering such an inspection. [656-659]

COMPLAINTS received and sworn to in the Boston Munic-
ipal Court Department on March 9, March 18, and May 21,
1981.

Motions to suppress evidence were heard by Burnham, J.

Muriel Ann Finnegan, Assistant District Attorney, for the
Commonwealth.

John P. Ward for the defendants.

SMITH, J.  As a result of three warrantless inspections of a
private social club by Boston police officers, the defendants
were both charged with eight criminal complaints.[2]  The
defendants' motion to suppress was denied as to evidence
obtained as a result of a warrantless inspection conducted

---

[1] Five of the cases are against Paul L. Cadoret and six are against Joseph
D'Onofrio.

[2] The charged offenses were the following: keeping and exposing alco-
hol on March 1 and 8, in violation of G. L. c. 138, § 2; operating an un-
licensed Sunday dance on March 1, 8 and 15, in violation of G. L. c. 136,
§ 3; maintaining a nuisance on March 15, in violation of G. L. c. 139,
§§ 4, 5; maintaining a house of prostitution on March 15, in violation of
G. L. c. 272, § 6; keeping a house of ill fame on March 15, in violation of
G. L. c. 272, § 24.

on March 1, 1981, but allowed as to evidence obtained as a result of warrantless inspections made on March 8 and March 15. The Commonwealth has appealed from the judge's order as to the latter inspections. See Mass.R.Crim. P. 15(a)(2), 378 Mass. 882-883 (1979). The Commonwealth contends that the evidence ordered suppressed by the judge was obtained in the course of three warrantless administrative inspections authorized by G. L. c. 140, § 201.[3] The Commonwealth does not argue that the inspections on March 8 or 15 were permissible in the absence of statutory authority.[4] The judge ruled that the statute does not authorize the type of inspection that was conducted here.

We summarize the motion judge's findings of fact. The defendants are the managers of The Loft Twenty One Association, Inc. (Loft), a private social club located on the second floor of a building on Stanhope Street, Boston. The defendants claim the third floor as their residence.[5] During

---

[3] General Laws c. 140, § 201, provides in its entirety: "A sheriff, marshal or their deputies, a constable or police officer may at any time enter a billiard, pool or sippio room, bowling alley, skating rink, the licensed premises of a common victualler or room connected therewith, or a grove required to be licensed under section one hundred and eighty-eight, or any building therein, for the purpose of enforcing any law; and whoever obstructs or hinders the entrance of such officer shall be punished by a fine of not less than five nor more than twenty dollars." This section is made applicable to licensed club victuallers by the provisions of G. L. c. 140, § 21E.

[4] After the arguments in this case, the Supreme Judicial Court decided *Commonwealth* v. *Cadoret,* 388 Mass. 148 (1983). That decision concerned a warrantless search of the same club also conducted by officers of the Boston police department. The court upheld the allowance of the defendants' motion to suppress evidence, holding that "[i]f . . . there is an enforced admission charge, if the police are expressly denied admission without a search warrant, if the police see no criminal activity from the entrance area, and if there is no apparent breach of the peace or exigent circumstance, the proprietors of a club have a reasonable expectation of privacy that forecloses the Commonwealth from introducing evidence seized in a warrantless search of the premises." *Id.* at 151-152. At the time of that search, the club did not have a club victualler's license. Therefore, the court did not decide the effect of G. L. c. 140, § 201, on the right of the police to make a warrantless nonconsensual inspection.

[5] While it is not clear from the judge's findings, the inference may be drawn that the third floor can only be reached by a stairway from the second floor.

the relevant period of time in March, 1981, the Loft held a "club victualler" license issued by the city of Boston, in accordance with G. L. c. 140, § 21E.[6] The premises covered by the license were the second floor. At that time, the Loft provided a place for its members and their guests to socialize on weekend nights, including the early morning hours after other social establishments were closed. When the Loft was open, members and their guests gained entrance by "checking in" at the second floor landing with the defendant D'Onofrio, who positioned himself there each night for the purpose of monitoring a sign-in sheet and, with respect to some patrons, collecting an admission fee.

On Sunday, March 8, 1981, at approximately 4:00 A.M., five police officers entered the Loft for the purpose of making a warrantless inspection. D'Onofrio asked to be shown a search warrant, his request was ignored, and the officers conducted a search of the second floor over D'Onofrio's objection. They observed persons dancing, seized a glass that contained an alcoholic beverage, and informed the defendants that complaints would be filed. The third floor was not searched.

In the early morning hours of Sunday, March 15, six police officers conducted another warrantless inspection. Over D'Onofrio's objection, the officers inspected the second floor. On this occasion, however, they also entered and inspected the third floor, again over objection. On that floor, they observed a large number of persons dancing and, in one corner of the room, several partially clothed men engaged in group sexual activity. The officers ordered the activity to cease, and subsequently informed the defendants that further complaints would be filed against them for permitting sexual activity to take place in the Loft. Subsequently, criminal complaints issued against the defendants. We affirm the judge's order allowing the defendants' sup-

---

[6] A club victualler is a club licensed to serve food and nonalcoholic beverages to its members and guests but not to the general public. G. L. c. 140, § 21E. A different licensing scheme governs clubs dispensing alcoholic beverages. G. L. c. 138, § 12.

pression motion as to the warrantless inspections conducted on March 8 and 15.

The United States Supreme Court has extended the warrant requirement of the Fourth Amendment to administrative searches of private and commercial premises. *See* v. *Seattle,* 387 U.S. 541, 543 (1967). *Marshall* v. *Barlow's Inc.,* 436 U.S. 307, 311-312 (1978). Therefore, unless some recognized exception to the warrant requirement applies, a warrant is required to conduct an administrative inspection. *Marshall* v. *Barlow's Inc., supra* at 313. The United States Supreme Court has recognized exceptions from the search warrant requirement for "pervasively regulated business[es]," *United States* v. *Biswell,* 406 U.S. 311, 316 (1972) (firearms), and for "closely regulated" industries "long subject to close supervision and inspection," *Colonnade Catering Corp.* v. *United States,* 397 U.S. 72, 74, 77 (1970) (liquor). Inspections of such businesses or industries "may proceed without a warrant where specifically authorized by statute." *United States* v. *Biswell,* 406 U.S. at 317. Also see *Commonwealth* v. *Lipomi,* 385 Mass. 370, 380 (1982), where the court, quoting from *Donovan* v. *Dewey,* 432 U.S. 594, 600 (1981), stated that it is "clear that a warrant may not be constitutionally required when [the Legislature] has reasonably determined that warrantless searches are necessary to further a regulatory scheme and the [governmental] regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." Three factors must be present in order to have a lawful warrantless administrative search. They are (1) the enterprise sought to be inspected must be engaged in a pervasively regulated business, (2) the warrantless inspection must be a crucial part of a regulatory scheme designed to further an urgent governmental interest, (3) the inspection must be conducted in accord with a procedure authorized by statute itself carefully limited as to time, place, and scope. *Commonwealth* v. *Lipomi,* 385 Mass. at 380.

The Loft's license authorized it "to dispense food and beverages to be consumed on its premises, to its stockholders or members and their guests, but to no other." The judge ruled that by virtue of G. L. c. 140, § 201, the Legislature had placed the food and beverage industry within the perimeters of the *Colonnade-Biswell* warrant exception. Assuming without deciding that the judge was correct in so holding,[7] the statute does not authorize forcible nonconsensual inspections of the type conducted at the Loft. The statute provides that a fine may be imposed on the person obstructing or hindering such inspection. There is nothing in the statute that authorizes forcible entries. In examining a warrantless search made under a similar statutory provision, the United States Supreme Court stated, "Under the existing statutes, Congress selected a standard that does not include forcible entries without a warrant. It resolved the issue, not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector." *Colonnade Catering Corp.* v. *United States,* 397 U.S. at 77.[8] *Commonwealth* v. *Lipomi, supra* at 378. Because Congress had not authorized forcible entries as a part of the inspection procedure, the Court held that the evidence seized should be suppressed. *Colonnade Catering Corp.* v. *United States, supra* at 77. We follow

---

[7] For differing views of warrant requirements in the food industry, compare *United States* v. *New England Grocers Supply Co.,* 488 F. Supp. 230, 238 (D. Mass. 1980), and cases cited, with *United States* v. *Roux Labs., Inc.,* 456 F. Supp. 973, 976-977 & n.2, and cases cited (D. Fla. 1978).

[8] In *Colonnade Catering Corp.* v. *United States, supra,* Treasury agents inspected Colonnade's cellar without the consent of the manager, and forcibly opened a liquor cabinet, seizing the liquor found there. The Commonwealth attempts to distinguish *Colonnade* from the instant case by arguing that the statute in that case provides that a fine be levied against whoever "refuses to admit" an agent or "refuses to permit" an inspection, (see 26 U.S.C. § 7342 [1976]), as contrasted with language in G. L. c. 140, § 201, which provides for imposition of a fine upon "whoever obstructs or hinders the entrance" of an officer. We find that the difference in the language between the two statutes is of no consequence. In principle, both statutes are intended to punish similar misconduct, namely, any refusal to submit to official inspection of licensed premises.

the rationale of *Colonnade* and conclude that the Legislature, in providing that a fine be levied against anyone who refuses to permit an official inspection of licensed premises, precludes the type of warrantless nonconsensual inspections undertaken by the police here. Because of our holding, we do not consider the defendant's argument that G. L. c. 140, § 201, is unconstitutional under the factors cited in *Commonwealth* v. *Lipomi*, 385 Mass. at 380. See *School Comm. of Greenfield* v. *Greenfield Educ. Assn.*, 385 Mass. 70, 79 (1982) ("It is our duty to construe statutes so as to avoid . . . constitutional difficulties, if reasonable principles of interpretation permit it").

> *Order allowing motion to*
> *suppress affirmed.*

BROWN, J. (concurring). I agree fully with the views expressed in the principal opinion. I am, however, moved to comment on a matter, manifest here, that too often appears in our cases.

In the instant case the premises were raided at least three times — either five or six police officers were involved on two of those occasions. See *Commonwealth* v. *Cadoret*, 388 Mass. 148 (1983), where the Supreme Judicial Court mentions an additional instance. Apart from the unlawfulness of the activities of the law enforcement officials here, there are other troubling aspects to their improper conduct. Not only were scarce judicial resources needlessly wasted, but the allocation and use of precious law enforcement resources is shown to be peculiar. For another peculiar example, see *Commonwealth* v. *Grant*, 7 Mass. App. Ct. 203, 204 (1979) (on his seventy-sixth visit to lounge, "in the line of duty," undercover vice officer observed an obscene act — "simulated masturbation").

It seems strange that so many police officers, five on one occasion and six on another, were involved in raids of a building where it was believed that the occupants possibly were unlawfully dispensing food and beverages, and operating a Sunday dance without a license.

Without blessing in any way the activities of these defendants, I wonder how much assistance and crime prevention those police officers might have provided by patrolling in high crime areas, along violence-prone MBTA routes, and at other locations where past experience demonstrates the likelihood of great physical danger to the general citizenry.